# Staunton.

## ROBERTSON v. THE BERTHA MINERAL COMPANY, ET AL.

### September 16, 1920.

1. EASEMENTS—*Injunction—Unlawful Use of Easement.*—The right to proceed in equity for an injunction against the unlawful use of an easement is well settled.

2. INJUNCTIONS—*Unlawful Use of Easement—Agreement by Complainant Not to Apply for Injunction While Seeking Settlement—Case at Bar.*—A mining company which had constructed a railroad from its mines for the purpose of transporting the product of the mine over a right of way granted by complainant's predecessor in title, leased the railroad to a lumber company for the purpose of hauling lumber. Prior to this lease the railroad had not been used for a number of years and was out of repair. Before the repair and operation of the railroad under this lease went into effect, complainant protested, and notified both companies that he denied their right to repair or use the road; but, after a conference, agreed that he would not apply for an injunction, but would allow the work to proceed and settle with the companies the question of his compensation, reserving the right, if settlement could not be made, to have his rights in the premises determined according to law.

   *Held:* That upon failure of such amicable settlement, complainant's right to proceed in equity for an injunction against the unlawful use of the easement was not waived by this tentative agreement pursuant to which defendants were permitted to proceed with the repair and operation of the railroad.

3. EASEMENTS—*Visible Easement—Estoppel to Deny Existence.*—Where at the time of complainants's purchase of the land in question, whether the right of way of a railroad over the land had in fact been abandoned or not, its physical condition strongly indicated an actual abandonment, it having not been used at all for years, and there was nothing in its visible aspect to charge complainant with an acquiescence in the right of the defendants to use it.

*Held:* That the condition of the easement was not such as to estop complainant from denying defendants' right to resume its use.

4. RAILROADS—*Right of Way—Abandonment.*—The long-continued non-user of a railroad right of way, the removal of a depot and sidetrack which the original grantee of the right of way had covenanted to erect on the land, the long-continued failure to replace the bridges which had been washed away, and the erection of fences across the right of way by adjoining land-owners at the direction of the company, are facts tending strongly to prove an abandonment.

5. EASEMENTS—*Right of Way—Different Use—Prescriptive Period—Case at Bar.*—If the owner of an easement of right of way is using the right of way for a purpose not contemplated by the original grant, the right to this new and different use must depend upon its exercise for the prescriptive period.

6. EASEMENTS—*Right of Way—Condition Subsequent—Reverter—Case at Bar.*—The grant of a railroad right of way provided that the right of way should revert to the grantor whenever the railroad should "cease to be used for the purposes aforesaid for the space of ————."

*Held:* That this reverter clause was void as such because it failed to show that the minds of the parties ever met upon the question as to the time for which non-user could continue before operating to extinguish the right. If the phrase "for the space of ————" had been omitted, it could have been held that the parties contemplated a reasonable time.

7. EASEMENTS—*Void Reverter Clause—May be Referred to to Aid Construction.*—Although the reverter clause set out in the preceding syllabus was void, the court may and should look to its language, along with the other provisions in the deed to determine the purpose of the conveyance.

8. EASEMENTS—*Right of Way—Use.*—A deed conveyed a right of way for a railroad "for the purposes for which it is to be constructed." The grantee was purely a mining company, and the purpose of its charter right to build railroads was to facilitate the primary objects of its incorporation. The deed recited that the mining company was desirous of constructing a railroad from their coal fields and colliery through the lands of the grantee. The deed contained an inoperative reverter clause, which showed what was in the minds of the parties as to the use of the road by referring to the purposes aforesaid.

*Held:* That the deed could not be construed as passing anything but a right of way for a railroad for use in connection with

the primary purposes of the coal company. To extend it to a wholly different and foreign use, *e. g.,* for hauling lumber, would be to make a new contract for the parties.

9. EASEMENTS—*Right of Way—Use—Stipulation for a Depot and Siding.*—The stipulation for a depot and siding for the use of the grantor and the public, in the grant of a right of way for a railroad to a mining company, was merely incidental to the operation of the road for the purposes for which the right was acquired, and did not enlarge the grant.

10. EASEMENTS—*Ways—Use.*—The use of a way must be confined to the terms and purposes of the grant.

11. EASEMENTS—*Right of Way—Bill for Injunction—Construction of Bill.*—In a bill for an injunction against the unlawful use of a right of way, there was a fair inference from the averments that the road was used for some years for purposes not connected with the grant, and there was a positive statement that this and all other use then ceased entirely and was not resumed until about twelve years later, when the right to do so was promptly challenged by the owner of the land. The bill, therefore, was not subject to demurrer on the ground that it showed that the easment was used for other than the purposes of the grant for a period of more than fifteen years prior to the institution of the suit.

12. MINES AND MINERALS—*Expiration of Charter Rights—Suspension of Operations—Sections 36 and 38, Chapter 57, Code of 1873.*—Section 36, chapter 57 of the Code of 1873, providing that if any mining and manufacturing corporation should "suspend its operations for two years, its corporate rights and privileges shall cease," has no application to a mining company which had been taken over by another company more than twenty years before suit was brought, it not being shown that at any time prior to the merger the mining company had ever suspended operation for two years or any other period. And section 38 of the same chapter providing that the act of incorporation of every such company should be in force for thirty years "and no longer," has no application where the merger took place before the expiration of the thirty years from the passage of the act incorporating the mining company.

Appeal from a decree of the Circuit Court of Pulaski county. Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*F. W. Morton,* for the appellant.

*H. C. Gilmer, John S. Draper* and *Frank P. Noland,* for the appellees.

KELLEY, P., delivered the opinion of the court.

This is an appeal from a decree dismissing upon demurrer a bill in equity filed for the purpose of enjoining and restraining the defendants from using a certain railroad right of way.

The material facts as stated in the bill may be summarized as follows:

In the year 1878 the Altoona Coal and Iron Company obtained from the General Assembly of Virginia a charter of incorporation "for the purpose of mining coal, iron, salt, limestone, lead, zinc, manganese, or other ore, and manufacturing the same in the counties of Pulaski, Wythe and Bland, and with the privilege and right to make or to assist other joint stock companies, or corporation or association or individuals, in making roads, tramways, or railroads, from or by their mine, to intersect the Atlantic, Mississippi and Ohio Railroad at Martin's station, Pulaski county, or at some point west of said station, provided hereby, no road, tramroad or railroad shall exceed fifty miles in length." (Acts 1877-8 p. 34.)

Thereupon this company proceeded to open up and operate a coal mine, known as the "Altoona Mines," in Pulaski county, and constructed a narrow-guage railroad leading therefrom to Martin's station (now the town of Pulaski) about nine miles from the mine. The road was built for the purpose of transporting the product of the mine, prac-

tically all of which was used by the Bertha Zinc Company
in its smelting works at Martin's station.

In acquiring rights of way for its road over intervening
lands, the company obtained from W. W. Bentley and wife
(under whom complainant claims) a deed dated June 28,
1878, which conveyed the right of way involved in this suit.
This deed recites that 'the Altoona Coal and Iron Company
is desirous of constructing a railway from their coal fields
and colliery in said county (of Pulaski) over and through
the lands of the said William W. Bentley so as to connect
said railway with the Atlantic, Mississippi and Ohio Rail-
road at or near Martin's station," and that "the said William
W. Bentley has agreed to grant to the said A. C. & I. Com-
pany a right of way over his said lands for the said railway
upon the terms, stipulations, covenants and conditions in
this deed hereinafter contained." The deed then proceeds,
"for and in consideration of one dollar and for divers other
considerations," to grant to "the said Altoona Coal and Iron
Company, its successors and assigns forever the right
\* \* \* to make, build, construct and complete the said
line of railway over and through" the Bentley land, "and
when the same is completed to have and enjoy the free and
exclusive use of the same for the purposes for which it is
to be constructed," with the proviso "however, that this
grant is to be determined and the land occupied by the said
line of railway is —— revert to the said William W. Bent-
ley, his heirs or assigns whenever the said railway shall
cease to be used for the purposes aforesaid for the space
of —————." There was a further provision in
the deed requiring "the erection of a siding and depot shed
for the convenience of the said Bentley and the public at
such point as he may designate."

After the "Altoona Mines" had been operated for some
years, and the output during that period hauled over the
railway, the mining operations wholly ceased and have not

been since resumed. The cessation occurred more than twenty years prior to the institution of this suit, and since that time no coal has been hauled over the railway, and none of the purposes or objects for which the Altoona Coal and Iron Company was incorporated have been pursued by that company.

The complainant, W. T. Robertson, acquired from Bentley in 1911 the land traversed by the right of way in question. At that time the use of the railway for all purposes had been abandoned for about five years; the depot on the land "had long since been discontinued and removed; the siding there had been torn out and taken away; the bridges over Peak creek and said railway had been washed out some four years before and had never been replaced; adjoining neighbors of complainant had, under direction from the Bertha Mineral Company (successor in title of the A. C. & I. Co.), run their line fences clear across the said narrow-gauge railway and right of way so that the same was wholly and entirely obstructed, and the railway had not been used for any purpose for five years, nor for hauling coal, or any other purpose of its charter for twenty years."

In the meantime, pursuant to express authority of an act of the General Assembly approved February 10, 1894, (Acts 1893-4 p. 201) the Altoona Coal and Iron Company, by deed dated November 21, 1894, conveyed to the Bertha Zinc and Mineral Company "all of the charter rights, privileges, powers, franchises, effects and property, real, personal or mixed, heretofore or now owned by the said grantor, to pass to, vest in, and enure to the benefit of the said grantee, or its successor or successors;" and, by deed dated April 1, 1895, the Bertha Zinc and Mineral Company conveyed to the Bertha Mineral Company all the property rights and privileges which had been conveyed to the former by the above recited deed of November 21, 1894, from the A. C. & I. Company.

After the complainant, Robertson, purchased the Bentley land, and prior to the institution of this suit, but at a date not definitely shown in the bill, the Bertha Mineral Company, assuming the right to hold and use the railway and right of way over the land for purposes other than that of transporting coal from the Altoona Mines, leased the same to the Buckeye Lumber Company for the purpose of hauling lumber, logs, cross-ties, and other material in connection with the development of the last named company's lumber interests in Pulaski, Wythe and Bland counties. The railway track, which appears to have remained upon the right of way, but which was in bad repair, had been repaired and the Buckeye Lumber Company had been using it under this arrangement with the Bertha Mineral Company for some time before this suit was brought. Before this arrangement and operation went into effect, however, the complainant protested, and notified both companies that he denied their right to so repair or use the road; but, after a conference, it was agreed that the complainant should not then apply for an injunction, but should allow the work to proceed and thereafter settle with them the question of his compensation. In case such a settlement could not thereafter be amicably made, complainant was to have his rights in the premises "determined according to law."

After the railway was repaired and put in use over complainant's lands for the purposes last above recited, the Bertha Mineral Company and the Buckeye Lumber Company refused to treat further with the complainant and denied that they were violating any of his rights in the premises.

The demurrer, which of course admitted the truth of the foregoing alleged facts, was based upon the following grounds:

"1. The bill shows on its face that the plaintiff has an adequate remedy at law.

"2. The bill shows that the right-of-way has never been abandoned by the owners thereof.

"3. There is no condition precedent named in the deed by which the right-of-way was acquired by the predecessors in title of The Bertha Mineral Company, or by The Bertha Mineral Company.

"4. There is no condition subsequent named in said deed upon which title to said. right-of-way shall revert to W. W. Bentley or to the plaintiff, his grantee, of the land over which the right-of-way runs. The deed mentioned no specific purpose or use to which this road is restricted and the vague reference to reverter, 'whenever the railway shall cease to be used for the purpose aforesaid for the space of ———,' lacks the qualities of certainty and definiteness required in stating conditions subsequent, which are not favored in the law, and, when read in connection with the whole deed, is wholly meaningless.

"The bill shows that the easement was used for other than mining purposes for a period of more than fifteen years prior to the institution of this suit, thus showing conclusively not only an intent not to abandon the easement, but the construction placed on the grant of the easement by the parties to that grant.

"5. The right-of-way having been acquired by deed, its loss by mere nonuser can only come about by a lapse of time and a combination of circumstances sufficient to recreate in the owner of the dominant tenement a title to the easement by prescription.

"6. The corporate existence of Altoona Coal and Iron Company cannot be questioned or attacked collaterally, as is attempted in this proceeding.

"7. The bill shows on its face that the corporate. rights and franchises of Altoona Coal and Iron Company are merged in The Bertha Mineral Company, and that The Bertha Mineral Company is a going concern possessed of the

franchises, rights and property of Altoona Coal and Iron Company.

"8. The bill shows no equity in the plaintiff. The plaintiff acquired the land subsequent to the easement. At the time of his purchase the easement was in existence and visible upon the land, and the deed conveying the same to the grantors of The Bertha Mineral Company was of record in the clerk's office of Pulaski county, Virginia."

The decree complained of expressly over-ruled the first ground of the demurrer, and made no reference to the eighth, but the second, third, fourth, fifth, sixth and seventh were expressly sustained.

[1-3] It is clear that there was no merit in either the first or the eighth grounds. As to the first, the right to proceed in equity for an injunction against the unlawful use of an easement is well settled; and this right was not waived by the tentative arrangement set out in the bill pursuant to which the defendants were permitted to proceed with the repair and occupation of the railway. As to the eighth, the condition of the easement at the time of complainant's purchase was not, as claimed by defendants, such as to estop him from denying their right to resume its use. Upon the contrary, the allegations of the bill show that, whether the right of way had in fact been abandoned or not, its physical condition strongly indicated an actual abandonment, it had not been used at all for some years, and there was certainly nothing in its visible aspect to charge complainant with an acquiescence in the right of the defendants to use it in the manner now complained of. If, therefore, there was any force in the eighth ground, it was in the reference therein to the deed from Bentley to the Altoona C. & I. Company, and the effect of this deed was invoked and belongs more properly under the third and fourth grounds of the demurrer dealing particularly with the construction and effect of that deed.

[4, 5] The second proposition asserted in support of the demurrer, that "the bill shows that the right of way had never been abandoned by the owners thereof" presents more difficulty.   The bill distinctly relies upon abandonment as one of the grounds for relief.   Whether the facts as alleged are sufficient in law to establish an abandonment is perhaps a debatable question.   The long continued non-user, the removal of the depot and sidetrack which the original grantee had covenanted to erect on the Bentley land, the long continued failure to replace the bridges which had been washed away, and the erection of fences across the right of way by adjoining land owners at the direction of the Bertha Mineral Company, are facts tending strongly to prove an abandonment.   This question, however, need not be decided, if the appellant is right in the contention that the appellee is now using the right of way for a purpose not contemplated by the original grant.   If this be true, it is immaterial whether the right actually granted has been abandoned or not.   The right to this new and different use, if such it be, must depend upon its exercise for the prescriptive period, and the allegations of the bill, as we construe them, do not show such exercise.

[6, 7] We pass, therefore, to the third and fourth grounds of the demurrer, which involve the construction of the deed from Bentley and wife to the Altoona Coal and Iron Company conveying the right of way.   The effect of this deed, as well said by counsel for appellee, is the cardinal and decisive point in the case.

It is clear that the deed in question contained no condition precedent to the vesting of such title to the right of way as the deed was intended to convey.   The only express condition subsequent was one which provided that the grant was "to be determined and the land occupied by the said line of railway is —— revert to the said Wm. W. Bentley, his heirs and assigns, whenever the said railway shall cease

to be used for the purposes aforesaid for the space of————."
This reverter clause is void as such because it fails to show
that the minds of the parties ever met upon the question
as to the time for which non-user could continue before
operating to extinguish the right. If the phrase "for the
space of ————" had been omitted, we could, under fa-
miliar rules of construction, hold that the parties contem-
plated a reasonable time, and the further question would
then arise as to what would be such reasonable time. The
deed, however, shows that the parties did not intend to
leave the matter to construction, and further shows that
they did not agree upon the time themselves. The result
is to eliminate the effect of the reverter clause as an ex-
press condition subsequent. This, however, does not mean
that we may not or should not look to its language, along
with the other provision in the deed, in determining the
purpose of the conveyance.

[8] What, then, was the character of the right of way
granted by the Bentley deed? Was it limited to use related
solely to the operations of the Altoona Coal and Iron Com-
pany, or was it contemplated by the parties that the rail-
way to be constructed thereon was to be used also for other
and independent purposes?

The Altoona Coal and Iron Company was purely a min-
ing company, and the plain purpose of its incidental charter
right to build "roads, tramways or railroads" was to fa-
cilitate the primary objects of its incorporation. It is fair
to assume that both parties to the Bentley deed, executed
only a few months after the company got its charter, con-
tracted with reference to this fact. Further, and more di-
rectly to the point, the deed itself recites that this company
(exclusively a mining company) "is desirous of construct-
ing a railway from their coal fields and colliery in said
county and State over and through the lands" of the said
Bentley, and that the right of way is to be granted "upon

the terms, stipulations and conditions in this deed herein-
after contained." The deed then conveys the right of way
for the railroad "for the purposes for which it is to be con-
structed," and adds a reverter clause which was inoperative
as a condition subsequent for reasons above stated, but
which again shows what was in the minds of the parties
as to the use of the road by referring to "the purposes
aforesaid."

We do not think that the deed can naturally or fairly be
construed as passing anything but a right of way for a
railroad for use in connection with the primary purposes
of the coal company. To extend it, even if there has not
been a technical abandonment of the original grant, to the
wholly different and foreign purpose for which it is now
being used, would be to make a new contract for the par-
ties.

[9] The stipulation for a depot and siding (long since
removed) for the use of the grantor and the public was
merely incidental to the operation of the road for the pur-
poses for which the right was acquired, and did not enlarge
the grant.

[10] It follows, therefore, that the use now being made
of the right of way amounts to a material change in its
character as originally granted, subjects the servient tene-
ment to an additional burden, and is therefore, unlawful.
The use of a way must be confined to the terms and pur-
poses of the grant. 1 Lomax Dig. (2nd ed.) 680; *Clarke* v.
*Reynolds*, 125 Va. 626, 100 S. E. 468; 10 Am. & Eng. Enc.
(2nd ed.) 427; 14 Cyc. 1206; 9 R. C. L. p. 787.

[11] In the fourth ground of the demurrer there is this
concluding statement: "The bill shows that the easement
was used for other than mining purposes for a period of
more than fifteen years prior to the institution of this suit,
thus showing conclusively not only an intent not to abandon

the easement, but the construction placed upon the grant of the easement by the parties to that grant."

We do not so construe the allegations of the bill. They show; (1), that for at least twenty years prior to the institution of this suit the road had not been used for hauling coal, or otherwise in aid of any of the purposes for which the Altoona Coal and Iron Company was incorporated, and, (2), that for about five years prior to the purchase of the land by the complainant, in November, 1911, and therefore about twelve years before this suit was brought (in 1918) it had not been used for any purpose whatever. There is a fair inference from the averments in this connection that the road was used for some years for purposes not connected with the grant, and there is a positive statement therein that this and all other use then ceased entirely and was not resumed until about twelve years later, when the right to do so was promptly challenged by the owner of the land.

The fifth ground of demurrer, in view of what has already been said, requires no special discussion.

The sixth and seventh requires consideration because if the defendants should hereafter file an answer, the questions raised by those grounds might become material on the ultimate merits of the case.

[12] The appellant earnestly insists that the charter rights of the Altoona Coal and Iron Company have expired and that the easement in question was thereby necessarily terminated. This contention rests for its support upon section 36 of chapter 57 of the Code of 1873, providing that if any mining and manufacturing company "shall suspend its operations for two years, its corporate rights and privileges shall cease," and upon section 38 of the same chapter providing that "the act of incorporation of every such company, for manufacturing or mining, shall be in force for thirty years from the passage thereof, and no longer." The former provision is not applicable, if for no other rea-

son, because the bill does not show, either by specific allegation or by necessary inference, that the Altoona Coal and Iron Company, which had been absorbed and taken over by the Bertha Zinc and Mineral Company more than twenty years before this suit was brought, had at any time prior to the date of its conveyance to and merger with that company, ever suspended its operations under its charter for two years or any other period; and the latter provision does not apply, if for no other reason, because thirty years from the passage of the act incorporating the Altoona Coal and Iron Company had not expired when the merger aforesaid was effected. These considerations render it unnecessary to decide whether the alleged expiration of the coal and iron company's charter could be determined in a collateral proceeding. That question is wholly immaterial because the title to the right of way had lawfully vested in the Bertha Zinc and Mineral Company by virtue of the act of February 10, 1894, *supra,* and the deed pursuant thereto dated November 21, 1894. The consolidation and merger effected by the legislative act and the deed aforesaid effectually vested in the Bertha Zinc and Mineral Company the assets of the Altoona Coal and Iron Company. *Lake Drummond Canal Co.* v. *Commonwealth,* 103 Va. 337, 49 S. E. 506, 68 L. R. A. 92; *Dismal Swamp Railway Co.* v. *Roper Lumber Company,* 114 Va. 537, 77 S. E. 598, Ann. Cas. 1914-C, 641.

We are of opinion, for the reasons hereinbefore stated, that the facts alleged in the bill, the complainant is entitled to an injunction. The decree complained of will therefore be reversed, the demurrer overruled and the cause remanded for further proceedings to be had in conformity with the views herein expressed.

*Reversed.*