L. Richard **EDGCOMB** and Carolyn D. Edgcomb, Appellants (Defendants),

v.

**LOWER VALLEY POWER AND LIGHT, INC.,** Appellee (Plaintiff).

No. 95–218.

Supreme Court of Wyoming.

Aug. 7, 1996.

Gerald Mason of Mason & Graham, P.C., Pinedale, on oral argument; Paul K. Knight and Sara E. Van Genderen of Mullikin, Larson & Swift, LLC, Jackson, on brief, for Appellant.

Marilyn S. Kite, Stephen R. Duerr, and Paula A. Fleck of Holland & Hart, Jackson, for Appellee.

\* Chief Justice at time of oral argument.
1. In 1981, this statute appeared as Wyo. Stat. § 16-4-101, with an effective date of May 20,

Before TAYLOR, C.J., and THOMAS, MACY and GOLDEN,\* JJ., and SULLINS, District Judge.

THOMAS, Justice.

The claim of error is that genuine issues of material fact prevented the entry of summary judgment by the district court in favor of Lower Valley Power and Light, Inc. (Lower Valley) and against Jeffrey Wanamaker (Wanamaker), the prior owner of land sold to L. Richard and Carolyn D. Edgcomb (Edgcombs). Lower Valley, pursuant to grant of an easement from Wanamaker's predecessors in interest, operated an electric transmission line over the subject land from 1956 until 1992. In 1992, after obtaining the requisite authority to add a fiber optics cable for communications transmission, Lower Valley advised Wanamaker it needed to enter his property to replace the existing static line with the fiber optics cable. Wanamaker denied access, asserting there was no valid easement, and the existing transmission line constituted a trespass and nuisance. Lower Valley then commenced this action seeking a declaratory judgment, injunctive relief, ejectment, and damages for trespass against Wanamaker, who responded with an answer incorporating various counterclaims. The Edgcombs, as successors to the lawsuit as well as the land, appeal from the summary judgment in favor of Lower Valley. They assert genuine issues of material fact as to the intended scope, dimensions, and location of the easement; the impact of electromagnetic fields; and the existence of a nuisance. They also argue the legal invalidity of the easement pursuant to Wyo. Stat. § 34-1-141 (1981)[1]. We hold none of the claimed genuine issues of fact are material in this case, and we affirm the summary judgment entered in the trial court.

In their Brief of Appellant, the Edgcombs state the issues as:

1. Whether the district court erred in granting summary judgment in favor of Appellee Lower Valley Power and Light,

1981. It was renumbered Wyo. Stat. § 34-1-141 by 1982 Wyo. Sess. Laws ch. 62, § 1.

Inc. in finding that Appellee has a floating easement on Appellant Jeffrey Wanamaker's property because there exist genuine issues of material fact as to the intended scope, dimensions, and location of the easement granted to Appellee in 1954.

2. Whether the district court erred in granting summary judgment in favor of Appellee Lower Valley Power and Light, Inc. on Appellant Jeffrey Wanamaker's counterclaim for trespass because there exist genuine issues of material fact as to the physical dimensions of the easement and as to whether the electromagnetic fields emitted from the transmission line traversing Appellant's property have an actual effect or impact on the property.

3. Whether the district court erred in granting summary judgment in favor of Appellee Lower Valley Power and Light, Inc. on Appellant Jeffrey Wanamaker's counterclaim for nuisance because there exist genuine issues of material fact as to whether the electromagnetic fields emitted from the transmission line traversing Appellant's property are inherently harmful and unreasonably interfere with the use and enjoyment of the property.

Lower Valley states the issues differently in its Brief of Appellees:

A. Does LVPL have a valid easement for an electrical transmission line, with a fiber optic cable, across all of Appellants' property?

B. Can, as a matter of law, operation of the electrical transmission line on such easement constitute a trespass on Appellants' property?

C. Can, as a matter of law, operation of the electrical transmission line on such easement constitute a nuisance?

D. Are Appellants' claims of trespass and nuisance barred by the statute of limitations?

In 1954, Louis and Helen Z. Dopyera (Dopyeras) granted an easement across their land to Lower Valley for the purpose of an electrification or telephone transmission line.

The agreement between the Dopyeras and Lower Valley provides, in part, as follows:

Distribution and
*Transmission Line*
Right–Of–Way Easement

Louis Dopyera and Helen Z. Dopyera * * * do hereby grant unto LOWER VALLEY POWER AND LIGHT, INC., * * * and to its successors or assigns, the perpetual right to enter upon the lands of the undersigned, situated in the County of *Teton*, State of *Wyoming* and more particularly described as follows:

A tract of land approximately 709.37

acres in area, located _____ miles in _____ a direction from the Town of _____ and further described 16

as being in Section 5 - 8 - 17 - 21

28 - 29[2]
Township 38 Range 116 of the 6 - P

Meridian.

and to construct, reconstruct, rephase, repair, operate and maintain on the above-described lands and/or in or upon all streets, roads or highways abutting said lands, an electric transmission and/or distribution line or system, to cut and trim trees and shrubbery located within _____ feet of the center line of said line or system, or that may interfere with or threaten to endanger the operation and maintenance of said line or system, and to license, permit, or otherwise agree to the joint use or occupancy of the line or system by any other person, association or corporation for electrification or telephone purposes.

In 1979, Wanamaker acquired the servient tenement, subject to the easement owned by Lower Valley.

Construction of a 69 KV transmission line was begun in 1954 and was completed in 1956 in its current location. The line delivers power to Jackson Hole Valley through the Snake River Canyon. As constructed, the line traversed seven sections of the land orig-

---

2. The easement shows that the 16 is placed over the—(dash) between the 8 and 17 and the 28—29 are placed underneath the 5—8—17 below the line.

inally owned by the Dopyeras. In 1974, Lower Valley proposed to upgrade the capacity of the transmission line from 69 KV to 115 KV. A notice was published regarding this proposed change. The Public Service Commission (PSC) received no public comment about it, and no objections were received at a public meeting held to discuss it. In 1975, the line was reconstructed as a 115 KV line along the same path as the old line. Over the years from 1956, Lower Valley had entered the property to maintain the line without obtaining prior approval from Wanamaker or his predecessors.

In 1992, Lower Valley decided to replace the existing static telephone line with a fiber optics cable. Lower Valley then entered into an agreement with Silver Star Telephone Company (Silver Star) as a financial participant in the purchase and installation of a fiber optics cable along the existing transmission line. An application was made to the PSC for authority to construct a major utility facility consisting of the fiber optics cable. The PSC issued its order authorizing the fiber optics cable after finding Lower Valley and Silver Star had "demonstrated an immediate and critical need for this facility, which will benefit both utilities and their customers."

When Lower Valley advised Wanamaker it planned to enter his property to replace the static line with the fiber optics cable, Wanamaker denied access to the easement, asserting Lower Valley had no valid easement across the property, and the transmission line was a trespass and nuisance. Lower Valley then filed this action, seeking a declaratory judgment, injunctive relief, ejectment, and damages for trespass against Wanamaker. Wanamaker answered and filed numerous counterclaims. After a battery of motions had been filed by both sides, Lower Valley filed its second motion for summary judgment supported by a brief.

Following the submission of briefs, affidavits, and exhibits by the parties, and a hearing on the motion, the trial court granted Lower Valley's second motion for summary judgment, concluding Lower Valley's easement extended throughout Wanamaker's property; Lower Valley had a floating easement and, with it as a matter of law, went the right to use and affect Wanamaker's property adjacent to the line as long as that use is within the scope of the easement; Wanamaker did not have an exclusive possessory interest so no trespass existed; nor was there any actual effect on the property, which also nullifies a claim of trespass; the presence and operation of the transmission line was authorized and, as a matter of law, there was no nuisance; and the operation and maintenance of the line did not interfere with Wanamaker's use of his property, and diminution in value of the property alone does not constitute a nuisance. Wanamaker appealed from that order and, after the Edgcombs purchased the property in 1995, subject to the easement, they continued to pursue this appeal.

■ Edgcombs first assert genuine issues of material fact exist relating to the intended scope, dimensions, and location of the easement granted to Lower Valley in 1954. The Edgcombs contend the trial court failed to apply basic rules of contract interpretation in not construing ambiguities as they exist in the easement against Lower Valley. In *Steil v. Smith*, 901 P.2d 395, 396 (Wyo.1995), we stated the rules concerning construction of an easement:

The applicable standard of review is that we derive the meaning of an easement from its language, much as we would in the case of a deed or other written agreement. *Tibbets v. P & M Petroleum Co.*, 744 P.2d 651, 652–53 (Wyo.1987); *and see* 25 AM. JUR.2d *Easements and Licenses* § 75 (1966). **If the language of the easement is not ambiguous and if the intent of the parties can be gathered from its language, that should be done as a matter of law.** *Glover v. Giraldo*, 824 P.2d 552, 554 (Wyo.1992); and see *Smith v. Nugget Exploration, Inc.*, 857 P.2d 320 (Wyo. 1993); *Tibbets*, 744 P.2d at 653. Where an easement is claimed under a grant, the extent of the right depends on its terms. If the terms are specific, that is decisive of the limits of the easement. *Robertson v. Bertha Mineral Co.*, 128 Va. 93, 104 S.E. 832, 835 (1920) (easement for railway to haul coal not an easement for general rail-

way purposes); *Parham v. Bradberry*, 185 Miss. 402, 188 So. 298 (1939) (stairway easement to second story office not good for access to balcony of adjoining theater); JAMES H. BACKMAN AND DAVID A. THOMAS, A PRACTICAL GUIDE TO DISPUTES BETWEEN ADJOINING LANDOWNERS—EASEMENTS, § 1.03[1][a] (1989); 25 AM. JUR.2d *Easements and Licenses* § 74 (1966); and *compare State v. Homar*, 798 P.2d 824, 826 (Wyo.1990). (Footnotes omitted, emphasis added.)

▮▮▮ The Edgcombs argue the easement did not establish an intent of the parties to create a floating easement because it specifies sections of the servient estate within which the parties intended the easement to be located. We do not read the easement in the same way as the Edgcombs. An express easement not stating the location and dimensions is called a floating easement and is defined as an "[e]asement for right-of-way which, when created, is not limited to any specific area on servient tenement." BLACK'S LAW DICTIONARY 640 (6th ed.1990). This easement is silent with respect to the specific location and dimensions of the easement and, from that, we can infer the parties intended a floating easement at the time the easement was executed. The record does not inform us as to who designated the ultimate location of this easement, but it is clear it now is defined by the poles and lines traversing the Edgcombs' property. We hold the current location of the transmission line is the one the parties intended when the easement was created.

This resolution is consistent with the summarization of the law relating to express easements that fail to state the location and dimensions of the easement found in JON W. BRUCE AND JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND ¶ 7.02 (Rev. ed.1995) [hereinafter BRUCE & ELY]:

> [2] Location or Dimensions Omitted or Inadequately Described
>
> * * *
>
> [b] Designation by Court
>
> Parties frequently disagree over the location and dimensions of an express easement. Consequently, the description issue is often litigated. The initial point of inquiry is to determine whether the instrument creating the easement adequately locates the easement and describes its dimensions. **When interpreting express easements, courts usually start with the proposition that the terms of the written instrument control.** If the terms of description are inadequate or nonexistent, then extrinsic evidence may be considered to ascertain the intent of the parties as to the location and dimensions of the easement. *The parties are presumed to have intended an easement that is reasonably convenient or necessary under the circumstances.*
>
> * * *
>
> Once a court concludes that the location or the dimensions of the easement are not adequately described in the instrument, it generally examines the surrounding circumstances to determine the intent of the parties in this regard. The parties may have fixed the location and dimensions of the easement by oral or collateral written agreement. If not, the courts look to various factors to establish a reasonable description of the easement. As noted by the highest court of Kentucky, this process "taxes the best resources of judicial ingenuity." **One factor is the purpose of the easement, which is particularly important with respect to ascertaining the dimensions of an inadequately described easement.** Other factors include the geographic relationship between the dominant and the servient estates, the use of each of the estates, the benefit to the easement holder compared to the burden on the servient estate owner, and admissions of the parties. **But the factor that the courts most frequently rely on is use of the servient estate for the purpose for which the easement was created.**
>
> Use commenced after the execution of the easement and to which the servient estate owner acquiesces is also persuasive. However, the courts must be careful to determine the location and dimensions of the easement on the basis of the circumstances at the time the easement was created. Once an inadequately de-

scribed easement is fixed by use and acquiescence, the holder cannot successfully claim that a different width or route is reasonably convenient or necessary. (Footnotes omitted, emphasis added.)

Lower Valley's use of the property is consistent with an electrification or telephone distribution and transmission line, which is the purpose for the easement. It also is persuasive of the proposition that the Dopyeras, owners of the servient estate at the time the easement was entered into, acquiesced in the use and location of the easement, showing the intent of the parties. Wanamaker and Edgcombs, subsequent owners of the property, bought it with notice, both actual and constructive, of the transmission line. All of them acquiesced in the location and dimensions of the easement. The trial court's Findings of Fact and Conclusions of Law No. 3 correctly states: "LVPL's easement extends throughout the Defendant's property." Indeed, this was true at the time the easement was granted. Once the transmission line had been constructed, however, it then became an easement with a definite location established by the course of the transmission line.

The intent of the parties to this agreement that the floating easement become attached to a definite location also can be discerned from the easement:

Any rights of homestead or other interest the undersigned may have, inconsistent with the rights hereinabove conferred is hereby waived and relinquished to the extent necessary to permit the free enjoyment of said rights and to that extent only. (Emphasis added.)

This language demonstrates an intention of the Dopyeras, acquiesced in by Lower Valley, that Lower Valley should have free enjoyment of the easement for a transmission line, but only "to that extent" necessary for such a line. Lower Valley acquiesced in the limitation.

Limiting the scope of the easement to the transmission line location as constructed accomplishes the purpose of the limitation set forth in the easement. This resolution also avoids the problem of burdening a servient estate with a floating easement, as identified in BRUCE & ELY ¶ 7.02[3], because it removes the burden attaching to the entire servient estate. The burdens upon development of the servient estate, limitation of financing possibilities, and alienation of the servient estate are all reduced. We hold the language of the easement is clear and unambiguous in this regard, and the intent of the parties can be gathered from the instrument. The floating easement granted by the easement became definitely located once the line was constructed. Lower Valley no longer has any right to burden the entirety of the Edgcombs' property, nor can the Edgcombs claim it is an invalid easement because it is not definitely located.

The Edgcombs also rely upon the language of the easement, which reads "to cut and trim trees and shrubbery located _____ within feet of the center line of said line or system, or that may interfere with or threaten to endanger the operation and maintenance of said line or system * * *." The Edgcombs contend the purpose of this blank in the phrase was to describe a width for the easement evidencing the intent to limit the easement to a specific area. We held above that the use established the location of the transmission line, and it is not necessary to consider whether this quoted language was intended to limit the easement to a specific area. A question as to the width of the easement remains. There can be no question the line with the blank in it was there to describe the width of the easement, but the grantors chose to leave it blank, evidencing an intent to provide no specific limit to the width or dimensions of the easement.

This precise question was addressed in the Supreme Court of South Carolina in a case in which a utility was sued for cutting trees farther from the power line than the property owner thought was necessary, and the court said:

Where a deed or other instrument grants the right-of-way but does not specify the width of such way, the determination of the width becomes basically a matter of the construction of the instrument with strong consideration being given to what is reasonably convenient and neces-

sary to accomplish the purpose for which the way was created. Where an instrument makes reference to the purpose for which the way is to be used, such is of aid in determining the width of the way. 25 Am.Jur.(2d), Easements and Licenses, Section 78, p. 485.

*Patterson v. Duke Power Co.*, 256 S.C. 479, 183 S.E.2d 122, 124 (1971).

This approach is very like the one we articulated in *Bard Ranch Co. v. Weber*, 557 P.2d 722, 730 (Wyo.1976), where we said: "The owner of the easement is said to have all rights incident or necessary to its proper enjoyment, but nothing more." We hold the trial court, in its Findings of Fact and Conclusions of Law No. 4, correctly identified the dimension of the easement when it said: "As a matter of law, LVPL has the right to use and affect the Defendant's property adjacent to the transmission line as long as that use is necessary to the operation of the line and within the scope of the easement." The dimensions of this easement are limited by what is reasonably convenient and necessary to provide a distribution and transmission line for electrification or telephone purposes. We do not understand Lower Valley to be claiming anything more.

In their next argument, the Edgcombs assert that, in the 1970s, Lower Valley substantially changed the carrying capacity of the transmission line from 69 KV to 115 KV in reliance upon a defective and incomplete easement. They claim Lower Valley increased the nature of the original easement by utilizing more land for the placement of additional poles and lines; increased the visual impact of the lines; and increased the area affected by the electromagnetic fields. The Edgcombs argue all of this was accomplished without obtaining an additional easement or paying additional consideration.

We spoke to this problem in *Bard Ranch Co.*, 557 P.2d at 731, saying:

Again quoting from American Jurisprudence:

"The rights of any person having an easement in the land of another are measured and defined by the purpose and character of the easement. A principle which underlies the use of all easements is that the owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden. * * *" 25 AmJur2d Easements and Licenses § 72, p. 478.

We do not want our opinion to be construed as freezing the permissible use of either the easement or adjacent lands strictly to the manner of use that was being made at the time of the grant. After construing the grant as creating a general easement the court said in *Cameron v. Barton*, 272 S.W.2d 40, 41 (Ky.1954):

"* * * This being so, the passway may be used in such a manner as is necessary in the proper and reasonable occupation and enjoyment of the dominant estate. * * * As the passage of time creates new needs and the uses of property change, a normal change in the manner of using a passway does not constitute a deviation from the original grant, and modern transportation uses are not restricted to the ancient modes of travel. * * *"

The Supreme Court of Oregon expresses the rule in *Jones v. Edwards*, 219 Or. 429, 347 P.2d 846, 848 (1959):

"* * * Unless the language of the creating instrument or the attending circumstances at the time of the grant indicate a contrary intent, the scope of an easement is not limited to the uses contemplated to be made at the time of or immediately after its creation, either with respect to the permissible uses of the easement or with respect to the permissible uses which may be made of the servient land by the servient owner. In the absence of a contrary intent both the uses of the dominant and servient owners are subject to adjustment consistent with the normal development of their respective lands. * * * The servient owner 'is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating instrument' and in the appli-

**cation of this principle the servient owner's use of his land 'may vary as the respective needs of himself and the owner of the easement vary.'** 5 Restatement, Property (Servitudes) 3027, § 486. [Citing other authorities]" (Emphasis added.)

Limitation in this easement is "to the extent necessary to permit the free enjoyment of said rights and to that extent only." It is clear on the record that enhancement of the line by Lower Valley from 69 KV to 115 KV was contemplated by the easement, which provides for an "electric transmission and/or distribution line or system" for "electrification or telephone purposes." The increase of the line capacity from 69 KV to 115 KV in 1975 and the proposed fiber optics line are consistent with the normal development of the respective rights and use, and these changes do not alter the scope of the easement.

· This record is clear that, in 1974, no objection was lodged by Wanamaker's predecessors in interest to the construction of the 115 KV line or to its continued operation. The record discloses no public comment was received in response to a public notice by the PSC about the planned upgrade, and no objection to the upgrade was lodged at the public meeting held to discuss the project. We hold neither the 1975 enhancement from 69 KV to 115 KV nor the proposed fiber optics line deviates from the intention of the parties to the easement. Neither of these uses increases the scope of the easement; they are only normal changes in the manner of using the easement.

■ The Edgcombs argue a genuine issue of material fact exists concerning the intention of the parties to the easement because the records in the office of the county clerk of Teton County, in which the easement was recorded in August 1954, do not show all of the sections included in the easement presented to the court. They contend that, since Sections 16, 28, and 29 were not included in the records of the Teton County clerk, those sections must have been added to the easement at some later date. They also assert this analysis is substantiated by the fact that the numeral "16" is placed over the "-" (dash) between the numerals "8" and "17" and the numerals "28—29" were placed below the line underneath "5—8—17" in the document, instead of being written in sequence.

■ With respect to this contention, Lower Valley points out that Sections 28 and 29 are located in Lincoln County, and transactions relating to those sections normally would not be recorded in Teton County. Lower Valley also argues no evidence was presented that the grantors objected to the placement of the transmission line on Sections 16, 28, and 29, and their acquiescence and that of their successors, persisting for forty years, is persuasive the intention of the parties was that the transmission line should cross all seven sections. It is clear, without the lands in Sections 16, 28, and 29, the transmission line would not be continuous and, therefore, would not be functional. These are persuasive arguments, but the Edgcombs presented this contention for the first time on appeal. "This court will not consider issues that are raised for the first time on appeal." *Stuckey v. State ex rel. Wyoming Worker's Compensation Div.*, 890 P.2d 1097, 1100 (Wyo.1995), and cases there cited.

■ The Edgcombs' final argument concerning validity of the easement is that Lower Valley was not entitled to summary judgment because Wyo. Stat. § 34–1–141 [3]

---

**3.** Enacted in 1981, twenty-seven years subsequent to the grant of the easement in 1954, Wyo. Stat. § 34–1–141 (previously Wyo. Stat. § 16–4–101) provides:

(a) Except as provided in subsection (c) of this section, easements across land executed and recorded after the effective date of this act which do not specifically describe the location of the easement are null and void and of no force and effect.

(b) Except as provided in subsection (c) of this section, agreements entered into after the effective date of this act which grant the right to locate an easement at a later date and which do not specifically describe the location of the easement are null and void.

(c) For purposes of this act [section] an easement or agreement which does not specifically describe the location of the easement or which grants a right to locate an easement at a

voids the document. The Edgcombs contend this statute requires a specific description of the location of the easement and invalidates the easement since no specific description was articulated. In *Mueller v. Hoblyn*, 887 P.2d 500 (Wyo.1994), we considered the retroactivity of WYO. STAT. § 34–1–141. We held an easement granted in 1969, prior to the adoption of WYO. STAT. § 34–1–141, was valid and enforceable against the grantor's successor, where the successor took with record notice of the existence of the easement, even though he did not know its exact location. Lower Valley accurately argues the result in *Mueller* is consistent with well-established Wyoming law to the effect that statutes are not applied retroactively unless retroactivity is expressly provided for in the statute. *Wyoming Refining Co. v. Bottjen*, 695 P.2d 647, 650 (Wyo.1985); *Bemis v. Texaco, Inc.*, 400 P.2d 529, 530, *reh'g denied*, 401 P.2d 708 (Wyo.1965).

This case fits comfortably within the parameters of *Mueller*. The easement was executed many years before WYO. STAT. § 34–1–141 became effective. Each successive owner, Wanamaker and the Edgcombs, took with both actual notice and constructive record notice of the easement for the transmission line, and they cannot successfully assert the easement is no longer valid. It is valid and enforceable against the Dopyeras' successors.

 The Edgcombs also contend there was error on the part of the district court in granting summary judgment in favor of Lower Valley on the Edgcombs' claim for trespass. They argue a genuine issue of material fact exists regarding the dimensions of the easement and whether the electromagnetic fields generated by the transmission line have an actual impact on their property. In RESTATEMENT (SECOND) OF TORTS ch. 7 at 275 (1965), trespasses against real property are defined simply as "invasions of the interest in the exclusive possession of land and in its physical condition." An easement appropriately is defined as "a nonpossessory interest in land of another." BRUCE & ELY ¶ 1.01. We have held "[c]onsent of the possessor or another authorized to consent is an absolute defense to trespass." *Salisbury Livestock Co. v. Colorado Cent. Credit Union*, 793 P.2d 470, 475 (Wyo.1990), citing *Belluomo v. KAKE TV & Radio, Inc.*, 3 Kan.App.2d 461, 596 P.2d 832, 840 (1979) (quoting *Fletcher v. Florida Publishing Co.*, 319 So.2d 100, 104 (Fla.Ct.App.1975)).

Our holdings above result in the possession of a valid easement by Lower Valley. We must approve and affirm the trial court's conclusion that "[b]ecause the Defendant has no exclusive possessory interest in the property affected by the easement, there cannot, as a matter of law, be a trespass," and "[a]dditionally, because there has been no actual effect on the property itself, there is no trespass." Consequently, we hold the Edgcombs' contention, that the trial court erred in granting summary judgment in favor of Lower Valley on the counterclaim of trespass, cannot be sustained.

 Finally, the Edgcombs contend Lower Valley was not entitled to summary judgment on the Edgcombs' counterclaim of nuisance. They argue whether the electromagnetic fields related to the transmission line are inherently harmful and unreasonably interfere with the use and value of their land is an issue that must be reserved for the trier of fact. In *Hein v. Lee*, 549 P.2d 286, 291 (Wyo.1976), we reaffirmed the definition of "nuisance" from *Lore v. Town of Douglas*, 355 P.2d 367, 370 (Wyo.1960), where we said, "[w]e have adopted a definition of a nuisance as being 'a class of wrongs which arise from an unreasonable, unwarranted, or unlawful use by a person of his own property, working an obstruction or injury to the right of another.' " Lower Valley had a valid easement for a transmission line for electrification and telephone purposes, and the scope of the easement has not been exceeded. The dimensions are those reasonably convenient or necessary under the circumstances. The

---

later date shall be valid for a period of one (1) year from the date of execution of the easement or agreement. If the specific description is not recorded within one (1) year then the easement or agreement shall be of no further force and effect.

(d) For purposes of this act [section] the specific description required in an easement shall be sufficient to locate the easement and is not limited to a survey.

uses for which the easement is being put are not unreasonable, unwarranted, or unlawful and, consequently, they do not constitute a nuisance. The trial court did not err when it concluded the operation and maintenance of the line does not interfere with the Edgcombs' use of their property. The trial court correctly ruled diminution in value of the property alone is not, as a matter of law, interference with the use of property.[4]

We summarize in this way. Lower Valley does possess a valid easement providing for a transmission line for electrification or telephone purposes, and its use of the property has not exceeded the scope of that easement. The dimensions of the easement are, as a matter of law, those reasonably convenient or necessary under the circumstances. We hold, in supplementation of the trial court's determination, that Lower Valley's easement has become fixed and is no longer a floating easement. The trial court should enter an amended judgment reflecting that the easement has become located and fixed by virtue of the constructed line.

We affirm the trial court's Order on Plaintiff's Second Motion for Summary Judgment.

---

4. The Edgcombs purchased the land in question after the lawsuit had been commenced by Wanamaker, and they agreed to pursue it until the date of closing and thereafter. It is obvious the easement, the presence of the transmission line, or the lawsuit did not deter Edgcombs from purchasing.