William LAMB and Delia Lamb; S.T. Gerganoff and Sybil A. Gerganoff; and Milton R. Miller and Peggy M. Miller, Appellants (Plaintiffs),

and

Donald M. Brown and Judith J. Brown; Brad A. Lindsey; Lee A. Sterner and Margaret M. Sterner; Elsie Hastings, Trustee; Janice D. Peck; John S. Lindsay and Nancy D. Lindsay; James J. Isaacs; Jack L. Reuber and Ruth E. Rueber; George Merrifield and Betty K. Merrifield; Bruce S. Thompson and Pamela K. Thompson; Robert P. Mannen and Patricia Mannen; Wesley R. Cottier and Virginia L. Cottier; Robert

C. Johnsen; Richard A. Williams and Mildred E. Williams; Liette Bolduc Guesman and Harlan E. Guesman, Sr.; Layne Evans and Roxanne Evans; and Thomas L. Parker, Appellants (Third–party Defendants),

v.

**WYOMING GAME AND FISH COMMISSION, Appellee (Defendant).**

No. 98–14.

Supreme Court of Wyoming.

July 14, 1999.

Rehearing Denied Aug. 31, 1999.

Representing Appellants: Mr. Robert A. Nicholas of Nicholas Law Office, Riverton, WY.

Representing Appellee: William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Ron Arnold, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

The primary issue in this appeal involves the interpretation of two public access fishing easements purchased by the Wyoming Game and Fish Commission in 1964. The district court ruled that the landowners along the easements must remove all objects and structures from the full 50-foot width of the easements. Because we agree that the owner of an easement with defined width, length, and location has the right to the area unhampered by structures and other objects, we affirm.

### ISSUES

Appellants present the following issues:

1. Did the district court err when it concluded that a walking fishing easement with a defined width, which grants fishermen a 50 foot way along the river to walk within to access and fish the river, forecloses the servient estate holder from placing, planting, or locating any object within that width, irrespective of whether such use unreasonably obstructs "public access" for fishermen to fish the river?

When a walking fishing easement creates a 50 foot way above the high water line for "access for public fishing," are fishermen entitled to an entirely unobstructed continuous 50 foot width—clear of any ordinary reasonable developments made by the servient estate, such as a picnic table, fire pit, water pump or other innocuous installations?

2. Was the district court required to consider the uncontroverted surrounding circumstances when construing the meaning of the easement and the purpose of the designated width?

3. Does the grant of "access for public fishing" along the streams, "to a point fifty (50) feet above and beyond the high water line" provide sufficient meaning regarding use as to make the easements unmistakably clear and unambiguous?

4. Did the district court err, as a matter of law, in finding each Third–Party Defendant an indispensable party?

5. Did the court err in denying Plaintiffs the right to a jury trial on issues of fact concerning what property unreasonably interfered with fishermen's access to fish the river?

6. Did the district [court] err in denying plaintiffs declaratory judgment relief and failing to make specific findings on whether or not the obstruction still exists and, if so, whether it unreasonably interferes with a fisherman's access along the river?

Appellee Wyoming Game and Fish Commission responds with these issues:

I. Whether the district court erred in determining that the landowners are prohibited from placing structures and other objects on the easements in issue in this case.

   A. Did the district court err in determining the written recorded easements were clear and unambiguous documents?

   B. Did the district court err as a matter of law by holding that an easement of a clearly defined width grants the dominant estate holder the right to use the full width of the easement without obstruction?

   C. Did the district court abuse its discretion when it determined that extrinsic evidence was not necessary

* Retired November 2, 1998.

to determine the meaning of an unambiguous easement?

D. Did the district court abuse its discretion in ordering removal of all objects placed on the easements?

II. Whether the district court erred in denying a trial by jury on those issues demanded in plaintiffs' complaint.

III. Whether joinder of the third party defendants was proper, irrespective of whether they were indispensable parties.

IV. Whether the landowners have privity to argue the position of the original grantors in asking that the easements be altered or rescinded.

### FACTS

In 1964, the Wyoming Game and Fish Commission (Game and Fish) purchased two fishing easements along the Jakey's Fork and Big Wind River in Fremont County near Dubois. The easements were purchased from the landowners along the river at the time, the Blehms and the Daniels. Acquired for public fishing access, the easements were to "extend from midstream on each of the said streams in both directions to a point fifty (50) feet above and beyond the high water line on each side of both of said streams."[1] The Daniel easement included the following clause:

It being the intent and purpose of this instrument to grant, within the limits specified, public fishing in and to all of the Big Wind River insofar as it traverses and is located upon the lands of the Grantors whether or not herein specifically mentioned.

After the easements were executed and recorded, the Blehms and the Daniels subdivided the property and sold the lots to various individuals, including the appellant landowners. Over time, the landowners have placed assorted structures and objects within the boundaries of the easements including a deck, a trailer, a clothesline, a rock pile, a fire pit, a satellite dish, a metal shed, a root cellar, garbage, fences, gardens, wood piles, wooden spools, water pumps, and some 50–gallon drums. In 1992, Game and Fish requested, by letter, that the landowners remove structures and objects, whether fixed or unaffixed, from the entire 50–foot width of the easements.

Several of the landowners refused Game and Fish's request for removal. In 1995, as landowners, the Lambs, the Gerganoffs, and the Millers filed suit seeking, *inter alia*, a declaration of their rights under the easements. Game and Fish answered and moved to join similarly situated landowners pursuant to W.R.C.P. 19. Over objection, sixteen other landowners were joined as third party defendants. A number of these third party defendants sought to avoid the costs of litigation by entering into stipulations with Game and Fish. Pursuant to the stipulations, Game and Fish agreed not to default the third party defendants, and all agreed to abide by the judicial resolution of the case.

Cross motions for summary judgment were filed. In their summary judgment materials, the landowners offered evidence of contemporaneous documents that they claimed established the parties' intent regarding the meaning of the easements. Game and Fish argued that the easements were unambiguous, and resort to the landowners' parol evidence was thus unnecessary. Game and Fish also contended that the public was entitled to unfettered access to the full 50 feet of the easements.

The district court granted summary judgment in favor of Game and Fish and entered an amended order on December 15, 1997, finding that "[t]he two fishing easement documents contain language which is clear and unambiguous making resort to extrinsic evidence improper." On the issue of removal of the property from the easements, the district court agreed with Game and Fish that "[t]he dominant estate holder of an easement with a defined width is entitled to use the full width as a matter of law." The district court ordered the individual landowners to remove the objects from the easements except for (1)

---

1. The easement purchased from the Blehms includes the "and beyond" language while the Daniels easement does not. Also, both easements grant access to only one side of the stream at various locations.

those items permitted by Game and Fish, and (2) those items that pre-dated the easements. The district court also enjoined the landowners from placing additional objects on the easements. The order for removal was stayed pending this appeal.

## DISCUSSION

### The Fishing Easements

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 275 (Wyo.1997); W.R.C.P. 56. The undisputed material facts in this case are that the landowners have placed structures and other objects within the boundaries of the easements. All that is left for our resolution is the interpretation of the fishing easements.

[W]e derive the meaning of an easement from its language, much as we would in the case of a deed or other written agreement. *Tibbets v. P & M Petroleum Co.,* 744 P.2d 651, 652–53 (Wyo.1987); and see 25 Am. Jur.2d Easements and Licenses § 75 (1966). If the language of the easement is not ambiguous and if the intent of the parties can be gathered from its language, that should be done as a matter of law. *Glover v. Giraldo,* 824 P.2d 552, 554 (Wyo. 1992); and see *Smith v. Nugget Exploration, Inc.,* 857 P.2d 320 (Wyo.1993); *Tibbets,* 744 P.2d at 653.

*Steil v. Smith,* 901 P.2d 395, 396 (Wyo.1995).

The landowners first claim the easements are ambiguous and invite us to ascertain the meaning of the easements by resort to parol evidence, including depositions from the individuals who negotiated the easements. We decline to do so. Only when a easement is ambiguous do we acquire license to construe that document by resort to extrinsic evidence. *Edgcomb v. Lower Valley Power & Light, Inc.,* 922 P.2d 850, 854 (Wyo.1996). Ambiguity exists where a document "is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning." *Martin v. Farmers Ins. Exchange,* 894 P.2d 618, 620 (Wyo.1995) (quoting *Ferguson v. Reed,* 822

P.2d 1287, 1289 (Wyo.1991)); *Kirkwood v. CUNA Mut. Ins. Soc.,* 937 P.2d 206, 208 (Wyo.1997). Subsequent disagreement by parties concerning the meaning of a written agreement does not render the agreement ambiguous. *Kirkwood,* 937 P.2d at 209; *Examination Management Servs., Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996). Here, the easements clearly specify the location, width, and length of the easements. The purpose of the easements is also clear: for public fishing access. We find no obscurity, indefiniteness, or double meaning in these easements. Rather, the parties' dispute is one over the meaning of the easements.

Having concluded that the easements in question are unambiguous, we must next determine the extent of the parties' rights under the easements. The landowners contend that the easements should be limited to the area reasonably necessary to walk along the river and fish. We do not agree. Generally, the owner of an easement has the right to the area or strip having definite boundaries unhampered by structures and objects placed thereon. *Flower v. Valentine,* 135 Ill.App.3d 1034, 90 Ill.Dec. 703, 482 N.E.2d 682, 687 (1985); *Diefenderfer v. Forest Park Springs,* 599 So.2d 1309, 1313 (Fla.App.1992); *Squaw Peak Community Covenant Church of Phoenix v. Anozira Dev., Inc.,* 149 Ariz. 409, 719 P.2d 295, 299 (App.1986); 28A C.J.S. *Easements* § 178 (1996). This rule applies even when the structures do not "obstruct" the easement holder's use of the easement, *Consolidated Amusement Co., Ltd. v. Waikiki Business Plaza, Inc.,* 6 Haw.App. 312, 719 P.2d 1119, 1124 (1986), and what is reasonable or necessary is not decisive. *Aladdin Petroleum Corp. v. Gold Crown Properties, Inc.,* 221 Kan. 579, 561 P.2d 818, 822–23 (1977); *Squaw Peak Community Covenant Church of Phoenix,* 719 P.2d at 299.

The rationale for the foregoing rule was summarized in *Wilomay Holding Co. v. McCoy,* 50 N.J.Super. 386, 142 A.2d 667, 673 (A.D.1958), a case involving a 10–foot easement for passage, by foot, to a lake. On appeal, the New Jersey court affirmed a trial court order that the servient estate holder

remove a bungalow that had been built over a portion of the easement. Rejecting the argument that the width of the right of way should be limited to what is reasonably necessary for passing, the court wrote:

> Defendants' argument that the language of the reservation should be construed to mean that the 10-foot strip south of the X–Y line can be obstructed by bungalows as long as enough of the strip is left open so that the upland owners can get to the lake shore, is not persuasive. Pursued to its logical extreme, this argument would permit a continuing number of such obstructions, and it would be difficult to draw the line as to when the total number of bungalows on the strip would have become so numerous that the remaining unobstructed portion could no longer be regarded as furnishing reasonable access to the lake. When such a degree of obstruction is reached how could the holders of the easement have an effective remedy? Which obstructions would be subject to removal?

*Id.* at 674.

The landowners attempt to distinguish their case by arguing that the instant "walking fishing" easements are substantively different from roadway easements, thus deserving special consideration. However, their argument fails to recognize case law extending the rule to easements similar to the fishing easements before this court. *See Flower v. Valentine,* 135 Ill.App.3d 1034, 90 Ill.Dec. 703, 482 N.E.2d 682 (walking easement for beach access); *Consolidated Amusement Co., Ltd. v. Waikiki Business Plaza, Inc.,* 6 Haw.App. 312, 719 P.2d 1119 (pedestrian passageway). For example, *Flower v. Valentine,* involved a 15-foot walking easement for beach access. When the parties quarreled over the extent of the easement, the Illinois court invoked the general rule that the easement holder "has the right to use the full width of the area or strip having definite boundaries unhampered by obstructions placed thereon." 90 Ill.Dec. 703, 482 N.E.2d at 687. The Illinois court recognized that "natural obstructions such as bushes and trees which existed at the time of the grant of the easement and were not placed there by the owner of the servient estate have been recognized as an exception to this rule." *Id.* The court also acknowledged that any obstructions erected prior to the grant should not be removed. *Id.* In the present case, the district court applied these general principles when it made its ruling.

■ Because the length, width, and location of the easements are defined with specificity, the district court did not err in concluding that the landowners must remove the structures and other objects from the easements. Our ruling should not be read to preclude the landowners from using their land within the easements in any manner consistent with the purpose of the fishing easements. *Bard Ranch Co. v. Weber,* 557 P.2d 722, 730 (Wyo.1976). However, appropriate use does not include the placement of permanent structures and other objects. If the landowners were permitted to do so, they would be given license to retake the easements in a piecemeal fashion. We will not permit such a result. The district court's entry of summary judgment and order of removal is affirmed.

### *Joinder of Third Party Defendants*

The third party defendant landowners argue they should not have been joined as parties to this declaratory action. We disagree.

Under the Wyoming Rules of Civil Procedure, joinder of parties is governed by Rule 19 and Rule 20. Rule 20, not relied upon in this case, is entitled "Permissive joinder of parties." Rule 19 encompasses "[j]oinder of persons needed for [a] just adjudication." [2]

---

2. Rule 19, W.R.C.P. provides:

**Rule 19. Joinder of persons needed for just adjudication.**

(a) *Persons to be joined if feasible.*—A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already

In performing a joinder analysis under Rule 19, a court must first determine if the person in question meets the criteria contained in Rule 19(a). *See* Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 1604, pp. 40–42 (1986). If so, the person is considered a "person to be joined if feasible." In cases where joinder is not feasible, the court must then examine the four considerations described in Rule 19(b) to determine whether "in equity and good conscience" the action should proceed. *Id.* If, in equity and good conscience, the action cannot proceed without the person in question, that person is considered indispensable and must be joined or dismissal will result. Rule 19(b); *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174, 1178 (Wyo.1988); *Reilly v. Reilly*, 671 P.2d 330, 332 (Wyo.1983).

In this case, we need not reach the issue of whether the third party defendants are indispensable parties under Rule 19(b). We would need to perform this analysis only if, after finding a "person to be joined if feasible," the claimed indispensable party had not been joined. Because the third party defendants were joined in this case, we need only determine if these persons meet the criteria contained in Rule 19(a).

■ We agree that the third party defendants are "persons to be joined if feasible" under Rule 19(a), and their joinder was thus proper. Tracking the language of Rule 19(a)(2)(i), it is clear that an adjudication in the absence of the third party defendants would have, as a practical matter, impaired or impeded their ability to protect their interests. The third party defendants tell us that, under the declaratory judgment act, "no declaration shall prejudice the rights of persons not parties to the proceeding." Wyo. Stat. Ann. § 1–37–113 (Lexis 1999). Relying on this statute, they argue that, because they cannot be affected by any declaratory judgment rendered in their absence, their ability to protect their interests could not be affected by their nonjoinder.

"Courts in actions seeking declaratory relief should attempt to join absentees whose joinder is feasible whenever their interests may be affected by the outcome or their presence is needed to adjudicate the dispute effectively." Charles Alan Wright, Arthur. R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 1616, p. 240. While we agree with the third party defendants that no declaration would be binding, in the technical sense, in their absence, we must examine practical, not merely legal, impairment of non-parties' interests. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108, 88 S.Ct. 733, 737, 19 L.Ed.2d 936 (1968). As a practical matter, the ability of the third party landowners to protect their interests would surely be impeded by a judgment rendered in their absence. First, as a legal matter, the third party defendants, if not joined, might have been subject to the preclusive doctrine of collateral estoppel in future litigation over the interpretation of the easements. *See Atchison v. State of Wyo.*, 763 F.2d 388, 391 (10th Cir.1985) (affirming Wyoming Federal District Court decision that concluded that Wyoming would not, if faced with the question, require the parties be identical before

parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) *Determination by court whenever joinder not feasible.*—If a person as described in subdivisions (a)(1) and (a)(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

(1) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

(2) The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(3) Whether a judgment rendered in the person's absence will be adequate;

(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

applying the doctrine of collateral estoppel). Even if this preclusive doctrine did not apply, pragmatism tells us it is unlikely that the district court would be willing to alter its interpretation of the easements in later lawsuits. Given these concerns, it is clear that the third party defendants' interests may have been impaired or impeded by a judgment rendered in their absence. We hold that the district court's joinder of the third party defendants was proper under W.R.C.P. 19(a).

### Right to Jury Trial

Because the district court properly determined that the landowners' declaratory action was appropriate for resolution at summary judgment, we need not address the issue of whether the landowners were entitled to a trial by jury. The issue is moot. *Shisler v. Town of Jackson,* 890 P.2d 555, 558 (Wyo.1995).

The decision of the district court is affirmed.