2002 WY 98

**Melvin D. HUTCHINGS and Virginia L. Hutchings, Appellants (Defendants),**

v.

**Michael S. KRACHUN, Appellee (Plaintiff).**

**Michael S. Krachun, Appellant (Plaintiff),**

v.

**Melvin D. Hutchings and Virginia L. Hutchings, Appellees (Defendants).**

Nos. 00–285, 00–286.

Supreme Court of Wyoming.

June 28, 2002.

LaVoy O. Taylor, Cokeville, WY, Representing Appellants Hutchingses.

Dennis L. Sanderson, Afton, WY, Representing Appellee Krachun.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellants Hutchingses (hereinafter "landowners") own land over which there exists an easement providing access to property owned by appellee Krachun (hereinafter "easement owner"). After a bench trial, the district court entered a Judgment Based On Findings of Fact And Conclusions of Law ("Judgment") and companion Order ("Order") ordering, in part, that the description of the easement in this case be reformed to conform to the centerline of the existing roadway. The court further enjoined land-

owners from blocking or barricading the right of way of easement owner because the easement owner had erected a cattle guard that complied with Wyoming Highway Department regulations where the easement meets the county road. Finally, the district court found in its findings of fact and conclusions of law that cattle guards are unsafe and inadequate barriers within which to contain horses. Landowners and easement owner all then timely appealed the Judgment and Order.

[¶ 2] We affirm in part and reverse, in part.

## ISSUES

[¶ 3] Landowners' issues are paraphrased as follows:

1. Do landowners have the right to maintain a gate in front of the cattle guard and to keep it closed when they have their horses in pasture?

2. Did the District Court err when, it in its Judgment and Order, it stated: "The description of the easement leading to the [easement owner's] property as described in the deeds from Bernard Larsen and Marcine Larsen to Roy Seaquist and from Roy Seaquist to [easement owner] is hereby reformed to conform to the centerline of the existing roadway as shown on the Plat prepared by Lloyd B. Baker?"

Easement owner sets forth the issues as:

I. Whether a cattle guard constructed to State Highway Department standards is an acceptable substitute for a gate.

II. Whether landowners of the servient estate may place a gate in front of the cattle guard.

III. Whether the trial court erred in reforming the easement to conform to a resurveyed description of the roadway.

Easement owner further specified this issue, with which landowners agree:

Is the trial court's finding that all cattle guards are unsafe and inadequate barriers with which to contain horses supported by adequate evidence?

## FACTS

[¶ 4] The easement came into existence in 1977 when a previous owner of all the property conveyed a parcel of property to a predecessor of easement owner. The deed contained the following language with reference to the easement, which followed a pre-existing road used by the previous owner, to go to and from their pasture property:

Together with a perpetual right of way for ingress and egress for Grantee and his heirs, successors and assigns to and from Grantee's property to the county road, over, across and along the lands of the Grantors, to enter upon the lands of the Grantors, and said right of way is more particularly described as follows:

Beginning N 0°0' E, 462.0 feet from the W ¼ Corner of Section 15, T 34 N, R 119 W and running thence N 28°30' E, 280 feet, thence N 20°25' E, 280 feet, thence N 35°0' E, 190 feet, thence N 71°56' E, 160 feet, thence S 85°32' E, 103 feet, thence N 67°0' E, 90 feet, thence N 69°50' E, 40 feet, thence N 78°40' E, 45 feet, thence S 75°20' E, 38 feet, thence S 89°0' E, 100 feet to the County Road and extending ¾ rod each side of above described centerline.

The foregoing right of way is subject to the condition that said right of way shall remain a private road and shall be shared with the Grantors, and their heirs, successors and assigns, and shall not be fenced in by Grantee or his heirs, successors and assigns, unless permission in writing is given by the Grantors, or their heirs, successors or assigns; and further provided that Grantee may clear the snow from the full 1½ rod width of said right of way, throwing snow on the Grantors' lands on either side of said right of way for snow removal, and either Grantee or Grantors, or their heirs, successors, or assigns, shall have the right to construct and maintain a roadway over, across and along the above described easement right of way to the extent as may be deemed necessary by either party for proper access along said right of way for access to Grantors' or Grantee's land.

[¶ 5] The predecessor to easement owner built a home on his parcel and improved the

easement from the county road to his property. A wire gate remained where the easement met the county road. Subsequently in 1989, easement owner herein purchased the parcel. In 1990, easement owner removed the wire gate where the easement meets the county road and constructed a cattle guard.

[¶ 6] In 1992, landowners took ownership of the servient estate to the easement, which consisted of pasture land, and began to run a purebred quarter horse business. In the fall of that year, a colt owned by landowners was injured by becoming trapped in the cattle guard allegedly because easement owner had plowed the cattle guard full of snow. An agent for landowners then placed a chain across the cattle guard so horses would not get trapped in the cattle guard or jump over it onto the county road.

[¶ 7] From the fall of 1992 until early summer of 1998, whenever landowners had horses on their pasture land, they usually kept either a wooden pole across the county road cattle guard or metal panels in front of that cattle guard to protect their horses. Easement owner would usually, but not always, remove and replace these items when passing either to or from his property. During this timeframe, landowners had approximately five horses either injured or jump the cattle guard onto the county road.

[¶ 8] As a result, landowners installed a metal gate in front of the cattle guard and kept it closed when they had horses on their pasture land. This arrangement apparently worked well until mid November of 1998 when easement owner began to leave the gate open. This led to landowners barricading the easement with a tractor. Further, since easement owner then went through a metal gate at the south side of the cattle guard to gain access to his property leaving that gate open, landowners also barricaded that entrance.

[¶ 9] This action was then commenced with easement owner filing a complaint, which was followed by landowners filing a counterclaim. Easement owner originally sought an order requiring landowners 1) to remove the gate and to not further barricade the easement, 2) pay damages for trespass, nuisance and intentional infliction of emotion-

al distress, and 3) pay punitive damages. Later, easement owner amended his complaint requesting that the court order a reformation of the easement to the location of the existing roadway. The crossclaim of the landowners initially prayed that the district court order easement owner to 1) close any gates placed across the cattle guard, 2) install a cattle guard that was fit for horses and to keep it in adequate condition for such purposes, 3) pay damages for trespass, destruction of property, and emotional distress, and 4) pay punitive damages. The landowners then amended their crossclaim requesting that the existing roadway be moved from its present location and moved to that location described within the original deed and for resulting damages.

## STANDARD OF REVIEW

[¶ 10] A trial of this case was held before the court with the court issuing specific findings of fact and conclusions of law. The purpose of specific findings of fact is to inform the appellate court of the underlying facts supporting the trial court's conclusions of law and disposition of the issues. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). While the findings of fact made by a trial court are presumptively correct, we examine all of the properly admissible evidence in the record. Because this court does not weigh the evidence de novo, findings may not be set aside because we would have reached a different result. Rather, the appellant has the burden of persuading the appellate court that the finding is erroneous. *Id.* See also *Maycock v. Maycock*, 2001 WY 103, ¶ 11, 33 P.3d 1114, ¶ 11 (Wyo.2001). Findings of fact are not set aside unless inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. The definitive test of when a finding of fact is clearly erroneous is when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A determination that a finding is against the great weight of the evidence means that a finding will be set aside even if supported by substantial evidence. *Id.* See also *Mathis v.*

*Wendling,* 962 P.2d 160, 163 (Wyo.1998). Conclusions of law made by the trial court are not binding on this court and are reviewed de novo. *Maycock,* ¶ 12.

[¶ 11]  We most recently also recognized that an easement is defined as "an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property." *Hasvold v. Park County Sch. Dist. No. 6,* 2002 WY 65, ¶ 13, 45 P.3d 635, ¶ 13 (Wyo.2002)). We derive the meaning of an easement from its language, much as we would in the case of a deed, contract or other written instrument. *Id; Lamb v. Wyoming Game & Fish Comm'n,* 985 P.2d 433, 437 (Wyo.1999). In construing an easement, we seek to determine the intent of the parties to the easement. If the language of the easement is unambiguous and if the intent of the parties can be gleaned from its language, that should be done as a matter of law. *Hasvold,* ¶ 13; *Steil v. Smith,* 901 P.2d 395, 396 (Wyo.1995). Where an easement is claimed under a grant, the extent of the easement depends on the terms. If the terms are specific, that is decisive of the limits of the easement. *Edgcomb v. Lower Valley Power & Light, Inc.,* 922 P.2d 850, 854 (Wyo.1996).

### DISCUSSION

#### The Cattle Guard

[¶ 12]  Although they do not raise it as a separate issue on appeal, landowners make considerable argument in their brief that easement owner's placement of a cattle guard that meets applicable state standards upon the easement places an inappropriate increased burden upon the easement. Further, landowners argue that the holding rendered in *Van Raden v. Harper,* 891 P.2d 78 (Wyo.1995), is not authoritative precedent that should be applied in this case since the facts sufficiently differ from this case than those which arose in *Van Raden.* They contend that *Van Raden* dealt with a general easement and not an easement subject to conditions. Hence, landowners assert that this difference is adequate reason why the holding in *Van Raden* is not controlling in this case. We do not agree.

[¶ 13]  In *Van Raden,* this court held as a matter of law that installing cattle guards on a right of way easement is a permissible improvement of an easement and does not materially increase the burden of the servient estate. 891 P.2d at 79–80. In addition, we recognized that the easement involved in *Van Raden* was an access easement. Similarly, we also noted that in the case of *Weiss v. Pedersen,* 933 P.2d 495, 500 (Wyo.1997), wherein we subsequently recognized *Van Raden,* that such easement also involved an alleged prescriptive right of way or access easement.

[¶ 14]  Looking at the easement in this case, we hold the language used to be clear and unambiguous and that extrinsic evidence need not be considered in its construction. The language used plainly expresses a solitary desire to grant an easement for ingress and egress or right of way to the grantee, his heirs, successors, and assigns to their land and, as such, constitutes an access easement. Similarly, the easement reserves the right of the grantors, their heirs, successors, and assigns to use the easement to also access their land. Therefore, we see no reason why the rule of law espoused in *Van Raden* should not be applied in this case. We recognized in *Van Raden* that the installation of a cattle guard promoted the primary purpose of the easement which was to provide convenient passage. This is likewise the case here. Placing a cattle guard on the easement by easement owner in no way prohibits access and convenient passage of landowners as reserved; therefore, it cannot be said to place an inappropriate increased burden upon the easement.

#### The Gate

[¶ 15]  Landowners further contend that the language used within the easement allows them to construct and maintain a gate on the easement where the easement meets the county road. They argue that the language used within the easement that

> [t]he foregoing right of way is subject to the condition that said right of way shall remain a private road and ***shall be shared with the Grantors, and their heirs, successors and assigns ... and either***

*Grantee or Grantors, or their heirs, successors, or assigns, shall have the right to construct and maintain a roadway over, across and along the above described easement right of way to the extent as may be deemed necessary by either party for proper access along said right of way for access to Grantors' or Grantee's land.*

(emphasis added) confers upon landowners this right. Again, we do not agree.

[¶ 16] As we stated previously, the language used within the easement is clear and unambiguous and expresses a solitary desire to grant an easement for ingress and egress or right of way to the grantee, his heirs, successors and assigns to their land and reserves the right of the grantors, their heirs, successors, and assigns to use the easement to access their land. This language, however, does not give landowners the express right to place a gate on the easement where it meets the county road. Rather, easement owner and landowners only possess the right to construct and maintain a roadway over, across, and along the easement *for proper access* along that right of way.

[¶ 17] As aptly recognized by landowners, this court has previously stated that the owner of an easement and the owner of the land each possess rights and each must, as far as possible, respect each other's use. *Lamb v. Wyoming Game & Fish Comm'n*, 985 P.2d at 437; *Edgcomb*, 922 P.2d at 854 (quoting *Steil v. Smith*, 901 P.2d at 396). Moreover, this court has stated that the rights of the easement owner and the landowner are not absolute but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient tenement. *Bard Ranch Co. v. Weber*, 557 P.2d 722, 730 (Wyo. 1976). Landowners confuse their reserved right to access along the easement with the right to contain their horses within their land in conducting their horse business. Simply put, the easement reserved them access and a right of way to their land as expressly described and nothing more.

[¶ 18] Likewise, the language used within the easement confers upon easement owner a right of way along the easement to access his property. This is an unfettered right which is unduly affected by the placement of a gate upon the easement where it meets the county road. As recognized in *WYMO Fuels, Inc. v. Edwards*, 723 P.2d 1230, 1236 (Wyo.1986):

We have said that the owner of the surface estate and the owner of an easement each possess rights. We have, however, accepted the proposition that the rights of the owner of the easement are paramount to the extent of the easement and include all rights incident or necessary to its proper enjoyment. The owner of the servient estate retains only such incidents of ownership as are not inconsistent with the easement.

(Citations omitted.) *In Weiss v. Pedersen*, 933 P.2d at 500, we specifically held that the owner of the servient estate cannot impede the easement holder's use of the easement by the placement of a gate in lieu of a cattle guard. Furthermore, *Van Raden*, 891 P.2d at 79, stands for the proposition that an easement holder's installation of a cattle guard is not an unauthorized increase in the burden on the servient estate. Consequently, our precedent supports the conclusion that, in most cases, the easement owner has the ultimate right to decide whether gates or cattle guards will be employed on access easements. Allowing the placement of a gate on the easement where it meets the county road by landowners prohibits the access and convenient passage of easement owner along the easement as expressly granted.

### Reformation

[¶ 19] Landowners further assert that the trial court erred when it reformed the easement to the present place where the roadway exists as opposed to the legal description elaborated within the grant deed. They argue that there was no testimony elicited at trial that there was an error made in the description within the deed or that the road which was in use was several feet off of the granted right of way. As a result, landowners argue that it was impossible for a prescriptive easement to have been shown since there was no proof of continuous and uninterrupted adverse use of a type sufficient

to put the owner on notice of a claim of right under color of title.

[¶ 20] Review of the Judgment, however, makes it clear that the trial court reformed the easement based on the theory of mutual mistake. This court has previously set forth the elements of mutual mistake:

The essential elements of mutual mistake in a written instrument for which a court of competent jurisdiction may grant appropriate relief are that there was an antecedent agreement which the written instrument undertakes to evidence; that a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence; and that in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake was mutual.

*Hansen v. Little Bear Inn Co.*, 9 P.3d 960, 964 (Wyo.2000) (quoting *Mathis*, 962 P.2d at 164). Further, we have recognized that while the general rule is that parol evidence is inadmissible when a contract is unambiguous, we make an exception in the case of mutual mistake. Moreover, if a court finds that a mutual mistake exists, it may then cancel or reform the contract. *Hansen*, at 964.

[¶ 21] In this instance, sufficient evidence exists that the intent of the original parties to the deed was to follow the roadway and that the original surveyor made a mistake when supplying the legal description ultimately used within the deed. A neighbor who had lived near the subject real property for over sixty years, and who was familiar with the road, testified at trial that the easement road followed a pre-existing two track road that had been in existence as long as he could remember. Another witness testified at trial that the original survey which resulted in the legal description of the easement and dominant estate used in the deed was performed by a local engineer who is now deceased. He testified that the error resulted from using the wrong point of beginning and loose survey practices. Easement owner testified that when he purchased the dominant estate in 1989, the road was already in place. Easement owner did not know, until after this action was well under way, that the

roadway did not run along the legal description for the easement as specified within the deed.

[¶ 22] Sufficient testimony was elicited at trial to establish in the record before us that a prior agreement existed between the prior owners to describe the easement within the deed where the roadway actually existed, that a mistake occurred in this endeavor, and that such mistake was mutual without fraud or inequitable conduct. As a result, the trial court found based on sufficient evidence that a mutual mistake had occurred since the makers of the deed intended that the easement run where the roadway actually existed and thereby correctly reformed the deed as originally intended. As we stated earlier, this court will not set aside findings of fact unless inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Maycock*, at ¶ 11; *Mathis*, 962 P.2d at 163; and *Hopper*, 861 P.2d at 538.

[¶ 23] Finally, landowners cannot now argue that the trial court's reformation of the easement to where the road exists to be inequitable since one of the landowners testified at trial that he did not desire to have the road moved and that it would be better for the parties to reform the easement to the location where the road existed.

### Findings of Fact and Conclusions of Law

[¶ 24] Finally, easement owner argues that the trial court erred when it found in its findings of fact and ruled within its conclusions of law contained in the Judgment that cattle guards are unsafe and inadequate barriers within which to contain horses. Easement owner argues that no evidence existed upon trial of this action that a cattle guard built to Wyoming Highway Department specifications is unsafe or inadequate within which to contain horses and, therefore, the trial court's similar conclusion of law is also not appropriate. We agree.

[¶ 25] Review of the record on appeal evidences much testimony concerning the inadequacy of the cattle guard located on the easement where it meets the county road to contain horses. However, in fact, the only time that the issue as to whether or not a

cattle guard built to state specifications was adequate to contain horses came during the trial when Mark Larsen testified. When Larsen was asked whether he would prefer a cattle guard that was narrow so that a horse could jump over it or a wide cattle guard where a horse who attempted to jump over it would land on the cattle guard, Larsen ultimately testified that he would prefer a cattle guard that horses could clear. He then went on to state without solicitation that he had seen horses jump over cattle guards built in compliance with state standards.

[¶ 26] This statement lacked any foundation and is speculative at best. Further, Larsen indicated that the particular cattle guard to which he was referring was not adequately maintained which could have added to the problem. Finally, Larsen stated that horses are also known to jump fences and gates if they desired to do so. Thus, we find that such testimony does not amount to credible evidence that a cattle guard built within state standards is unsafe and inadequate to contain horses.

[¶ 27] As stated above, the definitive test of when a finding of fact is clearly erroneous is when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A determination that a finding is against the great weight of the evidence means that a finding will be set aside even if supported by substantial evidence. *Maycock*, at ¶ 11; *Mathis*, 962 P.2d at 163; *Hopper*, 861 P.2d at 538. Here, absolutely no credible evidence existed within the record that a cattle guard built within state standards is unsafe and inadequate to contain horses. Accordingly, the finding of fact and underlying conclusion of law made to this effect by the trial court are erroneous and are stricken.

### CONCLUSION

[¶ 28] The conclusion of the district court that a cattle guard which complies with applicable state standards is a permissible improvement on an easement and does not materially increase the burden of the servient estate is affirmed. The order preventing landowners from blocking the easement with a gate is also affirmed, as is the reformation of the description of the easement. The finding of fact and underlying conclusion that cattle guards are unsafe and inadequate to maintain horses are erroneous and are to be stricken from the findings of fact and conclusions of law.

[¶ 29] Affirmed in part and reversed in part.

HILL, J., dissenting, with whom KITE, J. joins.

[¶ 30] I do not agree with the majority that the easement in question prohibited a gate, or that the gate in issue "prohibits the access and convenient passage of easement owner along the easement as expressly granted," or that the gate was not reasonable and necessary given the undisputed facts of this case. For these reasons, I respectfully dissent.

[¶ 31] It is undisputed that some of the landowner's horses were able to jump or otherwise traverse the cattle guard at issue, that if the horses got through the cattle guard, they would be in a county highway, and that some horses were injured in the process. The majority appropriately notes that the easement provides that the easement holder may maintain a roadway to the extent deemed necessary for proper access. However, the easement certainly does not imply that that roadway was meant to be absolutely unobstructed by a gate. The two parties are required to share the roadway, or at least that portion of it which traverses the landowner's property, and that can be readily accomplished even with a gate in place. After all, the properties are in rural Wyoming.

[¶ 32] The established law almost uniformly provides that a servient estate owner (the landowner in our discussions above) has all rights and benefits of ownership consistent with the easement. The grant of a right-of-way without reservation of the right to maintain gates does not necessarily preclude the servient estate owner from having gates. Indeed, unless the easement contains language expressly prohibiting a gate, or the circumstances surrounding the grant of the

easement make it clear that an open, unobstructed and unfettered right of access was intended, then the servient estate may maintain a gate so long as the gate is necessary and does not unreasonably interfere with the dominant estate's (in our discussion above, the easement holder's) right of access.

[¶ 33]  Furthermore, I do not perceive the cases of *Weiss v. Pedersen,* 933 P.2d 495 (Wyo.1997) and *Van Raden v. Harper,* 891 P.2d 78 (Wyo.1995), as requiring the result reached by the majority.  I believe that the majority opinion reads too much into those decisions, and it is my view that they are readily distinguishable on their facts.  To the extent they are viewed so as to justify the decision reached by the majority, I would modify our prior decisions to conform them to the vast majority of the cases which hold to the contrary, especially in a rural, agricultural setting.  *See* Daniel E. Feld, Annotation, *Right to Maintain Gate or Fence Across Right of Way,* 52 A.L.R.3d 9 (1973 and Supp.2001).

[¶ 34]  In a rural, agricultural area in Wyoming, I do not see the gate at issue here as unreasonable.  Indeed, it appears to be clearly necessary.  Although the district court's finding with respect to cattle guards may have been beyond the facts of this case, it seems clear from the uncontroverted facts that the cattle guard at issue was not effective in protecting the landowner's horses from injury, nor the traveling public from the dangers posed by landowner's escaped horses.  Again, given the rural, agricultural nature of the lands in issue and the facts of this case, I do not see a gate as an obstruction or inconvenience, and it certainly does not prohibit access.

[¶ 35]  A part of the district court's judgment is this:

> 2.  The Plaintiff's [easement holder's] request for immediate relief enjoining the Defendants [landowners] from keeping a gate across the existing cattle guard located next to the Lincoln County road is denied.  Provided, however, that if and when the Plaintiff erects a cattle guard that conforms to Wyoming State Highway Department standards, the Defendants

are, at that point, enjoined from placing a gate across or in front of the cattle guard.

[¶ 36]  I would modify that portion of the judgment to provide that the landowner may maintain a gate so long as the facts show it is necessary, and not an unreasonable interference with the easement, and remand this matter to the district court for any further proceedings which may be sought by the parties.