2005 WY 46

**JACKSON HOLE MOUNTAIN RESORT CORPORATION, a Wyoming corporation, Appellant (Plaintiff),**

v.

**ALPENHOF LODGE ASSOCIATES, a California Limited Partnership, Appellee (Defendant).**

No. 04–142.

Supreme Court of Wyoming.

April 14, 2005.

Representing Appellant: Joe M. Teig and Paula A. Fleck of Holland & Hart, LLP, Jackson, Wyoming.

Representing Appellee: Gerald R. Mason and Douglas J. Mason of Mason & Mason, P.C., Pinedale, Wyoming.

Before HILL, C.J., and GOLDEN and VOIGT, JJ., and GRANT, D.J., and STEBNER, D.J. Ret.

VOIGT, Justice.

[¶ 1]   This is an appeal from a declaratory judgment entered against the servient owner in an easement dispute.  We affirm.

## ISSUES

[¶ 2]   We will restate the issues as follows:

1.   Is the owner of land burdened by a defined-width easement prohibited from making temporary use of the land by *Lamb v. Wyoming Game and Fish Com'n*, 985 P.2d 433 (Wyo.1999)?

2.   Does the proposed use of the land burdened by the defined-width easement substantially interfere with the dominant owner's reasonable use of the easement?

## FACTS

[¶ 3]   Jackson Hole Mountain Resort Corporation (the appellant) owns certain property in Teton County.  In 1975, the appellant sold adjacent property to Rusticana, Inc. (Rusticana), also granting to Rusticana an easement over the appellant's property as follows:

> Seller hereby agrees to grant to purchaser an easement of 20 feet width along the west side of Lot 2, Tracts X and Y, for the purpose of constructing a walkway not to exceed 6 feet in width.

In 1988, Rusticana sold the property and its easement rights to Alpenhof Lodge Associates (the appellee).

[¶ 4]   The appellant developed plans for certain improvements to its property, which plans included "encroachment" upon the easement.  The appellee objected to the project and, when the dispute could not be resolved, the appellant filed this declaratory judgment action.[1]   The appellant sought summary judgment on the ground that, as servient owner, it had retained the right to use the easement in any manner that did not substantially interfere with the appellee's use of the easement.  *See Bard Ranch Co. v. Weber*, 557 P.2d 722, 730 (Wyo.1976).  Attached to the summary judgment motion was the affidavit of the project's architect, describing the "encroachment" as a building overhang nine feet above ground, supported by nine columns.

[¶ 5]   The appellee responded with its own motion for partial summary judgment directed specifically to the issue of the support columns.  A reply affidavit of the project's architect stated that the overhang would extend only ten feet into the twenty-foot wide easement.  The appellee then filed the affidavit of another architect, contending that an

---

1.   Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the' instrument determined and obtain a declaration of rights, status or other legal relations.

Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2003).

overhang nine feet high would not leave sufficient clearance for the appellee's proposed walkway. After a hearing, the district court denied the appellant's motion and granted partial summary judgment to the appellee, finding that the support columns would be an inappropriate encroachment on the easement. The appellant then filed a motion for leave to amend its complaint to substitute a cantilevered structure unsupported by columns.[2]

[¶ 6] In preparing for trial, the appellee deposed the appellant's architect. The appellee then filed another motion for partial summary judgment in regard to the following additional "encroachments" discovered during that deposition:

(a) The roof of the basement will extend out into the easement for 10 feet and will be above the surface for the entire length of the easement. . . .

(b) The roof will be used as a concrete sidewalk with two sets of stairs, handrails and supporting walls between the level of the sidewalk and the surface of the easement. . . . There is also a proposed concrete pad at the north end of the walkway. . . .

(c) Trees will be planted in the remaining ten feet of the easement. . . .

(d) The grade of the surface of the easement from east to west will be permanently changed to accommodate the sidewalk and to thereby move all of the slope originally in the 20 feet width to the remaining 10 feet of width. . . .

(e) The grade of the south portion of the easement will be permanently changed to accommodate a roadway requiring cuts and fills. The roadway will be paved with asphalt. . . .

(f) The east length of the easement will be excavated, during construction, to a depth of at least three feet for installation of several underground utilities. . . . Repair or maintenance of those utilities may require future excavation.

(g) Scaffolding may have to be erected at a width of 15 feet into the easement during construction and for any future maintenance of the cantilevered portions of the construction. . . .

(h) The roof slopes are designed to deliver snow and waste water into the uncovered remaining 10 feet width of the easement. Waste water from the roof will be guttered but waste water (rain) from the side of the building will be directed into said ten feet. No plan exists for handling this water. Future, but not present plans, will purportedly seek to hold all of the snow on the roof, . . . but until a specific plan is designed and approved, its effectiveness cannot be judged. [N]o changes to the plans other than removal of the columns are contemplated. . . . At any rate, no waste water or snow should be allowed to be diverted onto the surface of the easement.

(i) The construction of the basement will require excavation for more than ten feet into the easement.

[¶ 7] After a bench trial, the district court issued detailed findings of fact and conclusions of law and entered judgment in favor of the appellee. The district court found the easement language to be unambiguous and then made the following individual findings:

1. Construction of a proposed fire lane angling across the southern portion of the easement would require significant modification of natural grade, would result in a retaining wall across the easement that would be a substantial barrier to use of the easement as a walkway, and would violate the appellee's rights in the easement.

2. Excavation of the basement and construction of the cantilevered structure would require total obstruction of the easement for a period of eighteen to nineteen months and would violate the appellee's rights in the easement.

3. The proposed basement would extend ten feet into the twenty-foot wide easement

2. In anticipation of the motion for leave to amend complaint, the district court's summary judgment ruling included a finding that "reasonably contestable issues" remained concerning the overhang, even if cantilevered. Leave to amend was subsequently granted.

for the entire length of the building, would have a concrete roof to be utilized as a sidewalk, would require steps and cheek walls and rails, would operate as a barrier between the sidewalk and the backfilled grade, would be above finished grade, and would violate the appellee's rights in the easement.

4. The project would drastically change the natural grade of the easement because the fire lane would require a cut bank and leveling with a retaining wall, and because the basement roof/sidewalk would require leveling of half the easement with the remainder made much steeper, which would substantially impair the use of the remaining portion by the appellee, and would violate the appellee's rights in the easement.

5. The placement of underground utilities in the half of the easement not taken up with the proposed basement may require surface facilities, which surface facilities would violate the appellee's rights in the easement, as would future repair and maintenance of the underground utilities if such would disrupt surface use.

6. The proposed planting of trees and shrubs in the half of the easement not taken up with the proposed basement would violate the appellee's rights in the easement.

7. The proposed cantilevered building would substantially restrict natural light to the easement area and, if the appellee constructs a meandering walkway that utilizes the entire width of the easement, would make the use of the easement substantially less convenient and beneficial to the appellee.

8. The roof design of the proposed building will divert water and snow onto the half of the easement not taken up with the proposed structure and ameliorative devices should be required to avoid that result.

9. The appellee's proposed ADA-compliant meandering walkway requires the entire twenty-foot width of the easement and may require elevation above present grade in some areas, is an appropriate use of the easement so long as the walkway surface does not exceed six feet, and does not exceed the appellee's rights in the easement.

[¶ 8] Based upon these findings of fact, the district court then reached the following conclusions of law:

17. [The appellee] is entitled to the unencumbered use of the entire surface of the easement. The [appellant's] right to use the easement in any way that does not substantially interfere with the purpose of the easement under *Bard Ranch Co. v. Weber*, 557 P.2d 722 (Wyo.1976) does not allow the placement of any permanent or temporary objects on the surface of the easement under the doctrine of *Lamb v. Wyoming Game and Fish, supra.* The placement of objects on the surface of the easement, as proposed by [the appellant], is a substantial interference with [the appellee's] rights in the defined easement area.

18. [The appellant] is generally entitled to make use of the surface of the easement in ways which are consistent with [the appellee's] rights. For instance, [the appellant] can use any walkway constructed by [the appellee] on the surface of the easement for passage of its guests up and down the hill.

19. The easement, even though it contemplates the ultimate establishment of a 6 foot wide walkway, is not a floating easement. The easement location is established, its length and width are determined, and the location of the walkway within the easement is a matter of discretion for the [appellee] to determine. The failure of the [appellee] to define that walkway to the present time does not terminate or change its rights therein, nor is [the appellant] entitled to designate the location of the walkway on the easement surface.

20. [The appellant] is entitled to make use of the subsurface so long as doing so does not interfere with [the appellee's] rights on the surface. The obstruction of the easement area for excavation, and the drastic change of natural grade caused by the subsurface construction are examples of subsurface uses that do substantially interfere with [the appellee's] rights on the surface, and therefore, are prohibited. The placement of underground utilities

might be permitted, if they would not result in present or future obstruction of the surface of the easement.

21. The [appellant] is entitled to make use of the air above the easement, again so long as that does not constitute a substantial interference with [the appellee's] use of the surface. Anything which renders the use of the surface of the easement less convenient and beneficial to [the appellee] in some substantive way is a substantial interference. The almost total loss of natural light, for instance, by the very low 9 foot overhang, violates [the appellee's] rights to use the surface. It may be that an overhang two or three stories above the surface would not constitute a substantial interference. That issue is not presently before the Court.

## STANDARD OF REVIEW

▇▇▇ [¶ 9]  The appellant appealed from the findings of fact, conclusions of law, and judgment entered after the bench trial, but not from the summary judgment orders. We review a district court's findings and conclusions after a bench trial under the following standard:

"We review the trial court's conclusions of law *de novo*. The trial court's findings of fact are subject to the clearly erroneous standard:

'The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'

Also, in reviewing a trial court's findings of fact,

'we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

We affirm the trial court's findings if there is any evidence to support them.' "

*Carlson v. Flocchini Investments,* 2005 WY 19, ¶ 10, 106 P.3d 847, 852 (Wyo.2005) (*quoting Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003) (citations omitted)).

## DISCUSSION

[¶ 10]  We will first establish the legal context for this discussion. Nearly thirty years ago, we set forth a general statement as to the competing rights of the owners of the dominant estate and of the servient estate when an easement has been created:

" * * * An owner of land who grants a right of way over it conveys nothing but the right of passage and reserves all incidents of ownership not granted; he may make any use of his land that does not interfere substantially with the created easement. [Citing cases]" *Edwards v. Julian,* 192 Pa.Super. 121, 159 A.2d 547, 549 (1960).

* * * "[A]ny incident of ownership not inconsistent with easement and enjoyment of same is reserved to the grantor." 2 Thompson on Real Property (1961 Repl., 1976 Supp.) p. 70.

Both owners possess rights and each must as far as possible respect the other's use. As stated in 25 AmJur2d Easements and Licenses § 72, p. 478:

" * * * Though the rights of the easement owner are paramount, to the extent of the easement, to those of the landowner, the rights of the easement owner and of the landowner are not absolute, irrelative and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient tenement. The owner of the

easement is said to have all rights incident or necessary to its proper enjoyment, but nothing more. And, if he exceeds his rights either in the manner or in the extent of its use, he becomes a trespasser to the extent of the unauthorized use."

*Bard Ranch Co.*, 557 P.2d at 730. And further, " '[t]he rights of any person having an easement in the land of another are measured and defined by the purpose and character of the easement.' " *Id.* at 731 (*quoting* 25 Am.Jur.2d *Easements and Licenses* § 72 at 478).

[¶ 11] With access easements, the general rule is that the question of the reasonableness of a restriction upon use of the easement is a question of fact. *White v. Allen*, 2003 WY 39, ¶ 13, 65 P.3d 395, 399–400 (Wyo.2003). In *White*, the owners of the servient estate placed gates at each end of an access easement. This Court held that "[w]hether such gates are reasonably necessary to the servient estate, or constitute an unreasonable inconvenience to the dominant estate, are questions of fact to be resolved by the fact finder in the light of all the evidence that may be presented by the parties." *Id.* at ¶ 16, 65 P.3d at 400. Reasonableness, however, is not the controlling factor where the "location, width, and length of the easement" is specified:

> The landowners contend that the easements should be limited to the area reasonably necessary to walk along the river and fish. We do not agree. Generally, the owner of an easement has the right to the area or strip having definite boundaries unhampered by structures and objects placed thereon.... This rule applies even when the structures do not "obstruct" the easement holder's use of the easement, ... and what is reasonable or necessary is not decisive.

*Lamb*, 985 P.2d at 437. The general rule is that "the easement holder 'has the right to use the full width of the area or strip having definite boundaries unhampered by obstructions placed thereon.' " *Id.* at 438 (*quoting*

*Flower v. Valentine*, 135 Ill.App.3d 1034, 90 Ill.Dec. 703, 482 N.E.2d 682, 687 (1985)). More particularly,

> [b]ecause the length, width, and location of the easements are defined with specificity, the district court did not err in concluding that the landowners must remove the structures and other objects from the easements. Our ruling should not be read to preclude the landowners from using their land within the easements in any manner consistent with the purpose of the fishing easements. *Bard Ranch Co. v. Weber*, 557 P.2d 722, 730 (Wyo.1976). However, appropriate use does not include the placement of permanent structures and other objects. If the landowners were permitted to do so, they would be given license to retake the easements in a piecemeal fashion. We will not permit such a result.

*Lamb*, 985 P.2d at 438.

[¶ 12] The appellant contends that the district court made two legal errors in applying the law to the facts in this case. First, the appellant argues that the district court erred in ruling that *Lamb* prohibited even the ***temporary*** use or disturbance of the easement by appellant. This allegation has reference to the conclusion of law identified as number seventeen above, in which the district court said that the appellant's "right to use the easement in any way that does not substantially interfere with the purpose of the easement ... does not allow the placement of any permanent or temporary objects on the surface of the easement under the doctrine of *Lamb*[.]"

[¶ 13] Indeed, *Lamb* dealt with obstructions [3] that might be characterized as permanent, and did not go so far as to say that the servient owner could not, in any case, even temporarily block or impede the dominant owner's use of a defined-area easement. We believe, however, that the appellant's reading of the findings of fact and conclusion of law in this case is too broad. While the district court did reach the conclusion mentioned above, that conclusion was immediately fol-

---

**3.** "[A] deck, a trailer, a clothesline, a rock pile, a fire pit, a satellite dish, a metal shed, a root cellar, garbage, fences, gardens, wood piles, wooden spools, water pumps, and some 50–gallon drums." *Lamb*, 985 P.2d at 436.

lowed by this sentence: "The **placement of objects** on the surface of the easement, **as proposed by [the appellant],** is a substantial interference with [the appellee's] rights in the defined easement area." (Emphasis added.) We read the full language of this conclusion of law as being limited to the facts then before the district court, and in particular, to placement of the objects described in the appellant's proposed project, rather than a broad statement that no use, even temporary, is allowed. Furthermore, rather than dealing generically with "any temporary use," the district court was dealing solely and specifically with an identified construction period of eighteen to nineteen months. In its second finding, the district court identified total obstruction of the easement for a period of eighteen to nineteen months as the feature that would violate the appellee's rights. That is far from being a statement that any temporary use is prohibited.

[¶ 14] The district court's second error of law, as alleged by the appellant, was application of an inappropriate legal standard in evaluating the appellant's proposed project. The appellant contends that *Bard Ranch Co.,* 557 P.2d at 730, provides the correct standard: the servient owner "may make any use of his land that does not interfere substantially with the created easement." The appellant alleges that the district court erred by applying a lesser standard: that any use by the servient owner that makes the dominant owner's use "less beneficial and convenient" is prohibited.

[¶ 15] Once again, we must examine the district court's findings and conclusions to determine what standard actually was applied. It is true that, in the finding of fact labeled number seven above, the district court did use the phrase "less convenient and beneficial" in describing the effect of the proposed cantilevered building on the appellee's use of the easement. And it is also true that the district court made the following statement in its conclusion of law number twenty-one above: "Anything which renders the use of the surface of the easement less convenient and beneficial to [the appellee] in some substantive way is a substantial interference." It is noteworthy, however,

that the full phrase in the questioned finding of fact was "substantially less convenient and beneficial," making it the equivalent of the "substantial interference" mentioned in the conclusion of law. Clearly, the district court did not abandon the concept of substantial interference articulated in *Bard Ranch Co.* Indeed, in its first finding of fact, the district court quoted the substantial interference standard of *Bard Ranch Co.,* and its findings and conclusions are replete with references to the substantiality of the harm: "substantial barrier," "substantially impair," "substantially restrict," "substantially less convenient and beneficial," "substantial interference," "substantially interfere," "substantial interference," "in some substantial way," and "substantial interference."

[¶ 16] It appears to us that, when taken as a whole, the district court's findings of fact and conclusions of law clearly show the application of a "substantial interference" standard in evaluating the impact of the appellant's proposed structure on the appellee's use of the easement. It is equally evident, however, that the district court recognized that this was not a generic access easement, but was a defined-area easement with the specialized purpose of a meandering walkway. Consequently, in its evaluation of the proposed structure, the district court applied the dictates of *Lamb.* That is, the district court recognized that "obstacles" that might meet the balancing and reasonableness tests of *Bard Ranch Co.* do not necessarily pass muster when scrutinized in the context of a defined-area easement.

[¶ 17] Having determined that the district court applied the appropriate legal standard, we must now determine whether any of its findings of fact are clearly erroneous. Preliminarily, we will note that the appellant does not contest the district court's findings of basic facts. Rather, the appellant contends that the district court's erroneous view of the law "induced" erroneous findings of fact. This is, in effect, an allegation that the district court's findings of ultimate facts or conclusions of law were erroneous. An example will suffice. The district court found that the project would require a cut bank and leveling for the fire lane's retaining wall, and

that the basement roof/sidewalk would require leveling of half the easement, leaving the remainder with a steeper slope. Those were findings of basic facts. The district court then found that those changes would substantially impair the appellee's use of the easement. That was a finding of ultimate fact. And finally, the district court "found" that the changes would violate the appellee's rights. That was a conclusion of law. It is the second finding—the one of substantial impairment—with which the appellant takes exception. The appellant alleges that the district court did not apply the substantial interference standard of *Bard Ranch Co.* to the basic facts, but applied some lesser standard, resulting in a flawed determination of substantial impairment. We have concluded, however, that the district court correctly applied the law, so there was no adverse impact upon its findings of ultimate facts.

## CONCLUSION

[¶ 18] Under the easement, the appellee now has the right to install a meandering six-foot-wide walkway anywhere it chooses within the twenty-foot-wide easement. The appellant's proposed project would have (1) a fire lane with a retaining wall and modification of the remaining natural grade; (2) a basement roof/sidewalk extending ten feet into the easement, with steps, cheek walls, and rails, which would leave the remaining portion of the easement with a steeper grade; (3) underground utilities, possibly with surface structures, with future repair and maintenance needs; (4) trees and shrubs; (5) a cantilevered building hanging over the easement that would restrict natural light and would restrict use of the area for a walkway; (6) a roof design that would divert rain and snow onto the walkway area; (7) a construction period of eighteen to nineteen months, during which the appellee's access to the easement would be totally obstructed. Clearly, this project would leave the appellee with a greatly diminished right. Instead of the possibility of a meandering walkway over the full twenty-foot unobstructed easement, the appellee would be left with a steeper area half that size, encumbered by numerous obstacles. That is exactly what *Lamb* forbids.

[¶ 19] The district court did not err in concluding that the appellant's proposed project would violate the appellee's rights in the easement. Affirmed.