FILED
United States Court of Appeals
Tenth Circuit

February 10, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

HENRY H. HAWORTH and MARCIA Q.
HAWORTH, Trustees, or their successors
in trust, under the Henry H. Haworth
Living Trust; JAMES STEWART; JUDY
STEWART,

        Plaintiffs/Counterclaim
        Defendants - Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant/Counterclaim
        Plaintiff - Appellee,

UNITED STATES FOREST SERVICE, an
agency within the Department of
Agriculture; EDWARD SCHAFER,
Secretary of the Department of Agriculture,
acting in his official capacity; GAIL
KIMBELL, Chief, United States Forest
Service, acting in her official capacity;
RICK CABLES, Regional Forester, Rocky
Mountain Region, acting in his official
capacity; REBECCA AUS, Shoshone
National Forest Supervisor, acting in her
official capacity; RICK METZGER, Wind
River District Ranger, Shoshone National
Forest, acting in his official capacity,

        Defendants - Appellees,

v.

No. 11-8006
(D.C. No. 2:08-CV-00206-NDF)
(D. Wyo.)

HENRY H. HAWORTH LIVING TRUST;
J. RICHARD SMITH,

   Counterclaim Defendants -
   Appellants,

JOHN RYHTI; JANE RYHTI; OWEN
LAMPERT; JERI LAMPERT; DANIEL
WILKINSON; DONNA WILKINSON,

   Counterclaim Defendants.

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN,** and **MATHESON**, Circuit Judges.

---

In 1940, two landowners granted adjoining easements[1] (the "Easements") to the United States. The Easements authorize the United States to use a 60-foot-wide area of land for a truck trail. Although the Easements were granted in 1940, the United States did not attempt to construct a truck trail on the properties subject to the Easements until 2007.

In the years between 1940 and 2007, the properties subject to the Easements were subdivided, and the subdivided parcels were conveyed to several parties. In 2008, the owners of the subdivided properties (collectively the "Property Owners") filed a quiet

---

 &ast;This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

 [1]An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." Black's Law Dictionary 585-86 (9th ed. 2009).

title action against the United States, the United States Forest Service, and several federal employees (collectively "the Appellees") challenging the validity of the Easements. The Appellees filed two motions for summary judgment, which the district court granted, thereby affirming the United States' interest in the Easements.

The Property Owners now appeal the district court's rulings. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*

In June 1940, the Property Owners' predecessors-in-interest—J.A. Afflerbach and Martin Olson—granted two easements to the United States via right-of-way deeds. The properties subject to the Easements are located in Wyoming's Warm Springs Mountain area, part of the Shoshone National Forest. Together the Easements form a 60-foot-wide corridor of land running north to south.

In relevant part, the right-of-way deeds state:

> KNOWN ALL MEN BY THESE PRESENTS, That J.A. Afflerbach [and Martin Olson], . . . of the County of Fremont, State of Wyoming, in consideration of the sum of One Dollar ($1.00), in hand paid, and other good and valuable considerations, the receipt of which is hereby acknowledged, do[] hereby grant, bargain, sell and convey unto the United States of America, an easement and right of way in gross over and across [specifically described] tracts . . . of land . . . .
>
> Said right of way is for use for a truck trail by the grantee, its officers, agents, and employees and the public generally.
>
> This grant shall be effective so long as said easement actually shall be used for the purpose specified above, and all

3

> rights hereunder shall revert to the owner of the land as soon as said use thereof shall be abandoned, in fact, and discontinued.

Aplt. Appx. at 71-74.

The United States recorded the Easements in the land records of Fremont County, Wyoming, on July 22, 1940.

In 1939, before the Easements were conveyed, the United States Forest Service (the "Forest Service") surveyed the properties that would be subject to the Easements and approved the construction of a truck trail, which was designed to reach the Warm Springs Fire Lookout Tower (the "Lookout Tower"). A memorandum written in 1940 by a Forest Service engineer indicates that use of the contemplated truck trail would be "exceedingly light." Aplt. Appx. at 65. Despite the truck trail's initial approval, expenses related to "World War II . . . put the construction of the . . . [t]ruck [t]rail on hold indefinitely." Aplt. Br. at 8.

In 1964, the Forest Service sent a letter to Mr. and Mrs. Leon Cook (the "Cook Letter"), landowners in the Warm Springs Mountain area, who are not parties to this case. The Cook Letter stated that the Forest Service had discontinued its use of the Lookout Tower and that the Forest Service would no longer use an access road on the Cooks' property to reach the Lookout Tower. The Cook Letter addressed only the Forest Service's use of the access road on the Cooks' property. It did not address the Property Owners' properties or the Easements at issue in this case.

Over the next several years, the properties subject to the Easements were subdivided, and the subdivided parcels eventually were conveyed to the Property

4

Owners.  The Property Owners placed some improvements on the land, including homes

and wells.

On June 21, 2007, a Forest Service employee sent a letter to the Property Owners,

stating:

> This letter is to inform you that the [Forest Service] is
> interested in exercising recorded easements (copies enclosed)
> that appear to either cross or perhaps cross part of your land.
> . .  I would be open to meeting with you to discuss the
> possibility of re-routing the [E]asement[s] to best fit the
> changes that have occurred on the ground since the United
> States obtained the [E]asements.
>
> *Our intent in exercising the* [*E*]*asements is two fold*.  First, as
> you know, there have been many homes and outbuildings
> constructed near Warm Springs Mountain and more are
> planned.  As homes are built adjacent to public lands they
> become known as wildland urban interface (WUI) areas.  *Fire*
> *suppression in WUI areas is a significant challenge . . . .* In
> order to address the risk and cost, the Forest Service is trying
> to reduce the amount of fuels within the WUI areas. *. . . Fuel*
> *reduction work is accomplished in a variety of ways from*
> *commercial timber sales to non-commercial mechanical*
> *treatments to prescribed burning, all of which require access.*
> *. . .*
>
> Our second goal in exercising the [E]asements would be to
> provide for public access to the Warm Springs area.

Aplt. Appx. at 91 (emphases added).

**B.** *Procedural Background*

On September 19, 2008, the Property Owners filed a lawsuit against the Appellees

seeking to quiet title to the Easements under the Quiet Title Act ("QTA").  On January

30, 2009, the parties filed a joint motion to stay the proceedings pending mediation,

5

which the district court granted. During the next year, the parties engaged in settlement negotiations, but they were unable to resolve their dispute.

On August 6, 2010, the Appellees filed a motion for summary judgment, contending that the Property Owners' claims were barred by the QTA's 12-year statute of limitations.[2] On the same day, the Appellees also filed an answer to the Property Owners' complaint, which included a counterclaim against the Property Owners. Specifically, the Appellees' answer states:

> This is a counter claim: (A) [t]o quiet title in favor of the United States to certain easements in which the United States claims an interest; (B) [t]o obtain a declaration that the United States' proposed use of [the] [E]asements does not exceed the scope of th[e] [E]asements; and [t]o obtain an order requiring the movement or removal of any encroachments that interfere with the intended use of the [E]asements.

Answer with Counterclaim, Aug. 6, 2010 at 13-14.

On November 24, 2010, the Appellees filed a second motion for summary judgment. In support of the motion, the Appellees argued that they were entitled to summary judgment on their counterclaim because: (1) the Easements had not terminated or been extinguished, (2) the United States has not abandoned the Easements, and (3) the Forest Service's proposed road does not exceed the scope of the Easements.

On January 21, 2011, the United States District Court for the District of Wyoming entered an order granting the Appellees' first and second motions for summary judgment. The district court first held that the Property Owners' claims were time-barred under the

---

[2]The Appellees' motion was initially filed as a motion to dismiss, but the district court converted the motion into a motion for summary judgment.

QTA's 12-year statute of limitations.  Next, the court held that the United States had not

abandoned the Easements.  Finally, it held that the Forest Service's proposed road did not

exceed the scope of the Easements.

The Property Owners filed a timely notice of appeal challenging the district

court's grant of summary judgment.

## II.    DISCUSSION

On appeal, the Property Owners contend that the district court erred in granting the

Appellees' motions for summary judgment for three reasons.  First, they argue that the

Easements terminated or were extinguished "per the explicit reversionary language of the

[r]ight-of-[w]ay [d]eeds," Aplt. Br. at 2, when the Forest Service failed to build a truck

trail on the Easements.  Second, they contend that the United States abandoned the

Easements in 1964 when it sent the Cook Letter, which indicated that the Forest Service

would no longer use the Lookout Tower.  Finally, the Property Owners argue that the

Forest Service's proposed road exceeds the scope of the Easements.[3]

---

[3]On appeal, the Property Owners also argue that the district court erred in concluding their QTA claims are time-barred. They contend that their QTA claims are not time-barred because: (1) the Easements terminated or were extinguished, (2) the United States abandoned the Easements, or (3) the Forest Service's proposed road exceeds the scope of the Easements.

Although the Property Owners raise this issue in their brief, they note that their arguments concerning whether their QTA claims are time-barred are essentially identical to their arguments concerning the Appellees' counterclaim and the district court's grant of summary judgment on the Appellees' counterclaim. *See* Aplt. Br. at 2 n.1.  The Property Owners further note that, even if their QTA claims are time-barred, the district court had jurisdiction pursuant to 28 U.S.C. § 1345 to address the issues raised in the Appellees' counterclaim and second motion for summary judgment.  The Property Owners therefore state that this court need not decide whether their claims are time-

7

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg*, 659 F.3d at 997. "If no genuine issue of material fact exists, we determine whether the district court correctly applied the substantive law." *Dish Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1015 (10th Cir. 2011).

---

barred by the QTA's statute of limitations. Instead, they suggest that "in the interest of judicial economy" we should resolve the issues raised in the Appellees' counterclaim and second motion for summary judgment—whether: (1) the Easements terminated or were extinguished, (2) the United States abandoned the Easements, and (3) the Forest Service's proposed road exceeds the scope of the Easements.

Similarly, the Appellees state in their brief that "[t]he district court had jurisdiction over the[ir] . . . counterclaims under 28 U.S.C. § 1345." Aple. Br. at 8. They further state that "[f]or purposes of this appeal, this [c]ourt need not resolve the question whether the district court also had jurisdiction over [the Property Owners'] original quiet title claims" or whether those claims are time-barred." *Id.*

As explained below, we agree with the parties that, even if the Property Owners' claims were time-barred, the district court would have had jurisdiction pursuant to 28 U.S.C. § 1345 to consider the issues raised in the Appellees' counterclaim and second motion for judgment. Because the district court had jurisdiction to consider the Appellees' second motion for summary judgment, and because the Property Owners' arguments concerning the Appellees' counterclaim and second motion for summary judgment are essentially identical to the Property Owners' arguments that their claims are not time-barred, we need not and do not address whether the district court erred in concluding that Property Owners' QTA claims are time-barred. *See Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 927-28 (10th Cir. 2005).

We begin by addressing our jurisdiction to hear this appeal and then address each of the issues raised by the Property Owners.

## A. *Jurisdiction*

The Property Owners filed their complaint in this case under the QTA, which contains a 12-year statute of limitations. *See* 28 U.S.C. § 2409a(g). We have explained that "[t]imeliness . . . is a jurisdictional prerequisite to suit under [the QTA.]." *Rio Grande*, 599 F.3d at 1175 (quotations omitted). In other words, "unlike most statute of limitations, which are affirmative defenses," *id.* at 1176 (quotations omitted), "the QTA's statute of limitations acts as a jurisdictional bar." *Id.* at 1175-76 (quotations omitted).

When a court determines that a plaintiff's QTA claim is untimely, it must dismiss the plaintiff's claims for lack of subject matter jurisdiction. *See id.* at 1189. But in such cases, courts are not required to also dismiss *counterclaims* asserted by the United States. *See Amoco Production Co. v. United States*, 852 F.2d 1574 (10th Cir. 1988).

In *Amoco*, we explained that a counterclaim by the United States in a quiet title action "is not based on jurisdiction ancillary to that supporting [a] plaintiff's barred cause of action." *Id.* at 1579. Rather, a counterclaim asserted by the United States is "founded on independent jurisdiction conferred upon the district court by 28 U.S.C. § 1345," *id.*, which states that the district court has original jurisdiction "of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345. We further explained that "[t]he fact that the United States' action was brought as a counterclaim [was] immaterial because . . . independent jurisdiction allow[ed] the district court to adjudicate

9

the counterclaim despite the dismissal of the original complaint." *Amoco*, 852 F.2d at 1579.

In this case, the district court concluded that the Property Owners' QTA claims were time-barred under the QTA's 12-year statute of limitations.[4] However, as we explained in *Amoco*, the district court had jurisdiction to address the merits of the Appellees' counterclaims and their second motion for summary judgment pursuant to 28 U.S.C. § 1345. Because the district court had jurisdiction to consider the Appellees' motions for summary judgment and because the district court entered a final judgment granting summary judgment in the Appellees' favor, we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## B. *Termination of the Easements*

Having established the basis of our jurisdiction, we turn to the three issues the Property Owners have raised on appeal. We first address whether the district court erred in concluding that the Easements have not terminated or been extinguished pursuant to the reversionary language contained in the right-of-way deeds. Our review of this issue is governed by Wyoming state law. *See United States v. Dunn*, 557 F.3d 1165, 1172 n.5 (10th Cir. 2009) ("Deeds are a type of contract, and this court presumptively applies state law when interpreting contracts."); *Rio Grande*, 599 F.3d at 1177 ("[Q]uestions involving ownership, transfer, and title to real estate have traditionally been resolved according to the laws of the state where the realty is located." (quotations omitted)); *see also United*

---

[4]As explained above, we need not and do not address whether the district court erred in concluding that the Property Owners' QTA claims are time-barred.

*States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986) ("Absent controlling federal legislation or rule of law, questions involving real property rights are determined under *state law*, *even when the United States is a party*."  (emphasis added)).

In Wyoming, "[e]asements are [interpreted] under the same principles that have been established for interpretation of contracts." *Davison v. Wyo. Game & Fish Comm'n*, 238 P.3d 556, 560 (Wyo. 2010) (quotations omitted).  When interpreting an easement, the Wyoming Supreme Court's "primary goal is to determine the intention of the parties from a close reading of the documents' language and by interpreting the terms of the document according to their plain and ordinary meaning." *Id.* (emphasis added); *see also R.C.R., Inc. v. Deline*, 190 P.3d 140, 150 (Wyo. 2008) ("When construing an easement, we seek to determine the intent of the parties to the easement." (quotations omitted)).  "If the language of the easement is clear and unambiguous, [the court] interpret[s] the easement as a matter of law, without resorting to the use of extrinsic evidence to determine the parties' intent." *Lozier v. Blattland Invs., LLC*, 100 P.3d 380, 383 (Wyo. 2004) (quotations omitted).

In relevant part, the right-of-way deeds executed by the Property Owners' predecessors-in-interest state:  "This grant shall be effective so long as said easement actually shall be used for [a truck trail], and all rights hereunder shall revert to the owner of the land as soon as said *use* thereof shall be *abandoned*, in fact, *and discontinued*." Aplt. Appx. at 71, 73 (emphases added).

The Property Owners contend that "the purpose of the [E]asements was to access the Lookout Tower." Aplt. Br. at 30.  They further contend that this "purpose was

11

abandoned in 1964," and that the Easements terminated or were extinguished at that time.

*Id.*

The district court rejected this argument, stating:

> [The Property Owners] argue . . . that the [E]asement[s] w[ere] extinguished when the government failed to build a road, according to the terms of the [E]asement[s]. They argue that the reversionary language of the [E]asements means that the [E]asements were extinguished as a matter of law because no road was built. The government . . . [argues] that the [E]asement[s] at issue contemplate[] first building the road, then abandoning it. Only after both steps are complete [are] the [E]asement[s] extinguished. . . . [T]he court adopts [this] reasoning . . . . *The easement grants state that they are valid until a road is built and abandoned. There has been no road built, and none abandoned, so the easement grants are still valid.*"

*Haworth v. United States*, No. 08-CV-00206-NDF, slip. op. at 8-9 (D. Wyo. Jan. 21, 2011) (*Haworth*) (emphasis added).

We agree with the district court's analysis. The right-of-way deeds specify that the Easements will terminate or be extinguished only when the United States' *use* of the Easements for a truck trail is "*abandoned*, in fact, *and discontinued*." Aplt. Appx. at 71, 73 (emphases added). The term "discontinue" means to "break the continuity of, cease to operate, administer, use, produce, or take." Webster's New International Dictionary (2011), *available at* http://www.merriam-webster.com/dictionary/discontinue. The United States has never used the Easements to construct, maintain, or operate a truck trail, and it has not affirmatively stated that it would never do so. Accordingly, the United States has not discontinued its use of the Easements' stated purpose—operation of a truck trail.

12

Because the United States has not discontinued its use of the Easements for a truck trail, we hold that the reversionary language in the right-of-way deeds—which requires that use of the Easements' stated purpose be both abandoned in fact and discontinued— has not been triggered. We therefore affirm the district court's conclusion that the Easements have not terminated or been extinguished pursuant to the reversionary language in the right-of-way deeds.

## C. *Abandonment of the Easement*

Next, we address whether the district court erred in concluding that the United States has not abandoned the Easements.[5]

"[I]t is well established that the United States does not abandon its claims to property by inaction." *Rio Grande*, 599 F.3d at 1184 n.6 (quotations omitted). It is equally well established that the United States can "be deemed to have abandoned a claim of ownership . . . [only if] it *clearly* and *unequivocally* abandons its interest." *Id.* at 1186; *see also Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 597 (D.C. Cir. 2009) ("[T]he United States does not abandon a claim to property . . . unless it clearly and unequivocally abandons its interest through some official action." (quotations omitted)); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1201 (9th

---

[5]The right-of-way deeds refers to a "use" having been "abandoned" and "discontinued," which is the issue addressed in the preceding section. In this section, we consider whether the Easements themselves were abandoned by the United States.

Cir. 2008) (same); *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 739 (8th Cir. 2001) (same).[6]

"Clear and unequivocal" abandonment of a property interest by the United States must be "evidenced by documentation from a government official *with [Congressional] authority* to make such decisions on behalf of the United States." *Rio Grande*, 599 F.3d at 1186 (emphasis added). "[A] formal agency ruling or adjudication stating that the United States has abandoned its claim" to a property interest may satisfy the "clear and unequivocal" standard and give rise to a finding of abandonment. *Id.* at 1187. But "intra-office memoranda, opinion letters, and similar intra-governmental communications do not bind the government, such that they can effect an abandonment of property." *Id.* at 1186-87 (quotations omitted).

The district court concluded that the Property Owners had failed to demonstrate that the United States clearly and unequivocally intended to abandon the Easements through an affirmative act. It therefore held that "the [United States] did not abandon the [E]asement[s]." *Haworth*, slip. op. at 11.

---

[6]We note that the "clear and unequivocal" standard is consistent with the standard applied by Wyoming courts to determine whether the holder of a property right has abandoned property. In *Mueller v. Hoblyn*, 887 P.2d 500 (Wyo. 1994), the Wyoming Supreme Court stated: "A claim of abandonment can be upheld only where nonuse is accompanied by *affirmative* and *unequivocal* acts indicative of intent to abandon." *Id.* at 506 (emphases added) (quotations omitted); *see also Hasvold v. Park Cnty. Sch. Dist. No. 6*, 45 P.3d 635, 641 (Wyo. 2003) ("Abandonment cannot be established simply by showing a period of nonuse. Abandonment may, however, be proven by showing a period of nonuse and providing evidence of affirmative and unequivocal acts indicative of an intent to abandon." (quotations omitted)). Thus, even if this issue were governed by state law, we would still be required to determine whether the United States has clearly and unequivocally abandoned the Easements.

The Property Owners contend that the district court's conclusion was erroneous for two reasons. First, they argue that the "clear and unequivocal" standard does not apply in this case. Second, they argue that, even if the "clear and unequivocal" standard does apply, the evidence in the record demonstrates that the United States clearly and unequivocally abandoned the Easements. We address each argument in turn.

**1.** ***The "Clear and Unequivocal Standard" Applies in this Case***

The Property Owners contend that the "clear and unequivocal" standard does not apply in this case. To support this position, they rely on *LaFargue v. United States*, 4 F. Supp. 2d 593 (E.D. La. 1998). In *LaFargue*, the United States District Court for the Eastern District of Louisiana stated in a footnote that the rule that "the government cannot dispose of property without explicit Congressional authority," applies *only* "when the government acquired the disputed property under its power of eminent domain." *Id.* at 597 n.2.

The Property Owners fail to recognize that *LaFargue*'s restriction of the circumstances in which the "clear and unequivocal" standard applies clashes with our decision in *Rio Grande*. In *Rio Grande*, we applied the "clear and unequivocal" standard to determine whether the United States had abandoned an easement that was *granted* to it by another party. *See* 599 F.3d at 1169-75. Accordingly, in this circuit the "clear and unequivocal standard" has been applied to determine whether the United States has abandoned *non-condemned* property interests. *See id.* We therefore reject the Property Owners' argument that the "clear and unequivocal" standard does not govern our determination of whether the United States abandoned the Easements at issue in this case.

15

## 2. *Application of the "Clear and Unequivocal" Standard*

The Property Owners also argue, in the alternative, that the United States clearly and unequivocally abandoned the Easements in 1964 when the Forest Service sent the Cook Letter, which indicated that the Forest Service would no longer use the Lookout Tower. We reject this argument for three reasons.

First, the Cook Letter was not sent to the Property Owners or their predecessors-in-interest and does not refer to the Easements at issue in this case. Instead, it relates only to the Lookout Tower generally and to an access road on the Cooks' property, which is not part of the properties at issue in this case. Because the Cook Letter does not relate or refer to the Easements, it does not constitute a clear and unequivocal statement indicating an intent to abandon the Easements.

Second, the Property Owners have not alleged that Congress authorized the Forest Service employee who wrote the Cook Letter to abandon the Easements. "Given that the [Forest Service employee] doing the communication[] w[as] [a] subordinate officer[] of the United States, such congressional authorization would have been an essential requirement for the[] [employee] to effectuate an abandonment." *Rio Grande*, 599 F.3d at 1187 (quotations omitted); *see also United States v. California*, 332 U.S. 19, 40 (1947) ("[O]fficers who have no authority . . . to dispose of government property cannot by their conduct cause the government to lose its valuable rights by acquiescence, laches, or failure to act."). Thus, even if we were to conclude that the 1964 letter referred to the Easements, we would still conclude that the United States has not abandoned the

16

Easements because the Property Owners have not demonstrated or alleged that the Forest Service employee was congressionally authorized to abandon the Easements.

Finally, the Property Owners' argument that the United States abandoned the Easements when the Forest Service decided not to use the Lookout Tower relies on the premise that the Easements were granted for the sole purpose of providing access to the Lookout Tower. But the language in the right-of-way deeds does not indicate that the Easements were restricted to such a limited purpose. Accordingly, abandonment of the Lookout Tower does not reflect a clear and unequivocal intent to abandon the Easements.[7]

\* \* \*

The "clear and unequivocal" standard governs our determination whether the United States abandoned the Easements. The record in this case reveals no statement by any congressionally authorized government officer providing that the United States intended to abandon the Easements. We therefore affirm the district court's conclusion that the United States has not abandoned the Easements.

**D.** *The Proposed Road and the Scope of the Easement*

Finally, we address whether the district court erred in concluding that the Forest Service's proposed road does not exceed the scope of the Easements. Wyoming state law governs our resolution of this issue. *See Rio Grande*, 599 F.3d at 1177 ("[Q]uestions

---

[7]At least one federal circuit court has indicated that the United States cannot abandon an easement by abandoning the purpose of the easement. *See United States v. 434.00 Acres of Land*, 792 F.2d 1006, 1008-09 (11th Cir. 1986).

17

involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located." (quotations omitted)); *Dunn*, 557 F.3d at 1172 n.5 (10th Cir. 2009) ("Deeds are a type of contract, and this court presumptively applies state law when interpreting contracts.").

The Property Owners contend that the district court erred in concluding that the Forest Service's proposed road does not exceed the scope of the easements for two reasons. First, they argue that the Forest Service's rights under the Easements are limited to the uses contemplated at the time the Easements were granted and that the proposed road exceeds that scope. Second, they argue that, even if the proposed road were contemplated at the time the Easements were granted, the road would exceed the scope of the Easements because building it is unreasonable. We address each argument in turn.

### 1. *Limited Scope*

In 2007, the Forest Service sent the Property Owners a letter stating that it intended to build a road over the Easements to (1) reduce fire danger "in a variety of ways from commercial timber sales[,] to non-commercial mechanical treatments[,] to prescribed burning, all of which require access;" and (2) "provide for public access to the . . . area." Aplt. Appx. at 91.

The Property Owners contend that the Forest Service's proposed road exceeds the scope of the Easements. We disagree.

As explained above, when interpreting an easement, the Wyoming Supreme Court's "primary goal is to determine the intention of the parties from a close reading of the documents' language and by interpreting the terms of the document according to their

plain and ordinary meaning." *Davison*, 238 P.3d at 559 (quotations omitted); *see also R.C.R., Inc.*, 190 P.3d at 150 ("When construing an easement, we seek to determine the intent of the parties to the easement." (quotations omitted)). "If the language of the easement is clear and unambiguous, [the court] interpret[s] the easement as a matter of law, without resorting to the use of extrinsic evidence to determine the parties' intent." *Lozier*, 100 P.3d at 383.

"*If necessary*, the . . . court may . . . look to the circumstances surrounding the contract, as well as its subject matter and the purpose of the contract to glean the intent of the agreement." *Davison*, 238 P.3d at 560 (emphasis added) (quotations omitted). However, absent ambiguity, "[a]ny examination of the context within which the contract was drawn is limited to ascertaining the intent of the parties in making the agreement." *Id.* (quotations omitted). "[C]ontext cannot be invoked to contradict the clear meaning of the language used, and . . . extraneous circumstances do not justify a court in proceeding to insert . . . a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties." *Id.* (quotations omitted).

The right-of-way deeds in which the Easements were granted state: "[This] right of way is for use as a *truck trail* by the grantee, its officers, agents, and employees and the public generally." Aplt. Appx. at 71, 73 (emphasis added). The Appellees argue that the proposed road is consistent with how the term "truck trail" would have been understood at the time the Easements were granted. They note that a 1935 Forest Service handbook states "that the term 'truck trail' was intended to refer to minor projects

19

constructed by the Forest Service . . . and [that the term] encompass[ed] utilization by cars and trucks at low speeds compared with ordinary public roads." Aple. Br. at 22. Additionally, they note that a Civilian Conservation Corps manual from 1937 states that truck trails may have speed limits of 15 to 25 miles per hour and that they may be used by the "government and [the] public . . . for activities ranging from timber hauling to recreation." *Id.* at 23.

Based on these descriptions, we agree that the proposed road is consistent with how the term "truck trail" would have been understood at the time the Easements were granted.[8] In reaching this conclusion, we note that at the district court and on appeal, the Property Owners have not offered any conflicting definitions of the term "truck trail." Indeed, the district court noted in its order granting summary judgment that the Property Owners had "br[ought] no evidence of contemporaneous understanding of the term 'truck trail' that is different from the . . . evidence" offered by the Appellees. *Haworth*, at 14.

Instead of focusing on the terms of the right-of-way deeds, the Property Owners argue that the scope of the Easements is governed by the language of the 1940 memorandum written by a Forest Service engineer, which describes the contemplated use of the truck trail as "exceedingly light." Aplt. Appx. at 65.

The district court rejected the Property Owners' argument, stating:

---

[8]The Property Owners also argue that the Easements should be construed narrowly because they were gratuitously donated to the United States. But the right-of-way deeds through which the Easements were conveyed expressly state that the Easements were granted "in consideration of the sum of One Dollar ($1.00), in hand paid, and other good and valuable considerations." Aplt. Appx. 71, 73. Moreover, even if we narrowly construed the Easements, we would still conclude that the Forest Service's proposed road does not exceed the scope of the Easements.

> This memorandum has *no value* in interpreting the
> [E]asement[s]. It refers to the road, and the government's
> intent in building the road, but it says *nothing about the scope
> of the* [E]asement[*s*] *it might pursue to build the road*. It is
> entirely likely that the Government would seek out rights
> greater than necessary to meet its immediate needs so that it
> could expand the road, if necessary, without renegotiating
> with the owner of the servient estate.

*Haworth*, at 14 (emphases added).

We agree with the district court's analysis. The Forest Service engineer's memorandum speaks only to the Forest Service's contemplated use of the Easements in 1940. The Wyoming Supreme Court has stated that "the scope of an easement is *not* limited to the uses contemplated to be made at the time of or immediately after its creation." *Baker v. Pike*, 41 P.3d 537 (Wyo. 2002) (emphasis added) (quotations omitted). It also has stated that "[a]s the passage of time creates new needs and the uses of property change, a normal change in the manner of using [an easement] does not constitute a deviation from the original grant." *Edgcomb v. Lower Valley Power and Light, Inc.*, 922 P.2d 850, 857 (Wyo. 1996) (quotations omitted). Thus, the Forest Service's contemplated use of the Easements in 1940 does not govern the scope of the Easements. We therefore reject the Property Owners' argument that the proposed road exceeds the scope of the Easements because it is inconsistent with the truck trail described in the Forest Service engineer's memorandum.

## 2. *Reasonableness of the Proposed Road*

The Property Owners also argue that the Forest Service's proposed Road is unreasonable in light of the changed circumstances on the ground and that it therefore

21

exceeds the scope of the Easements.  The Property Owners contend that under Wyoming Law, use of an easement "must be *reasonable*" and "'logical with normal development of the properties.'"  Aplt. Br. at 42 (quoting *Baker*, 41 P.3d at 543).  They further contend that development of the Forest Service's proposed road "would destroy [their] homes and other improvements," and that this result "is neither 'reasonable' nor 'logical.'"  *Id.*  We reject this argument.

As the Property Owners note in their brief, the Wyoming Supreme Court has stated that use of an easement must be "reasonable" and "logical" in view of the development of the underlying property.  *See Baker*, 41 P.3d at 543.  But the Wyoming Supreme Court has explained that this "reasonableness" standard does *not* apply when "the location, width, and length of [an] easement is specified."  *Jackson Hole Mtn. Resort Corp. v. Alpenhof Lodge Assoc.*, 109 P.3d 555, 560 (Wyo. 2005) (quotations omitted).  Specifically, the Wyoming Supreme Court has stated that when the location, width, and length of an easement is specified "the easement holder has the right to use the *full width* of the area or strip having definite boundaries *unhampered by obstructions placed thereon*," and that the "landowners must remove . . . structures and other objects from the easement.  This rule applies even when the structures do not 'obstruct' the easement holder's use of the easement, . . . *and what is reasonable or necessary is not decisive*."  *Id.* (emphases added) (quotations omitted).

The "length, width, and location" of the Easements at issue in this case are "defined with specificity."  The right-of-way deeds through which the Easements were granted specify that the Easements relate to

22

> a strip of land thirty (30) feet in width on each side of a line beginning at Station 17823.2 on the north boundary of the SW ¼ of Section 27, whence the northwest corner of said Section 27 bears north 23 degrees north 57 minutes west, 2855.0 feet and extending thence south 5 degrees 55 minutes east, 592.5 feet; thence on the arc of a curve to the right whose radiace is 716.3, and whose central angle is 12 degrees 25 minutes; 155.2 feet; thence south 6 degrees 30 minutes west, 238.5 feet; thence on the arc of a curve to the left . . . .[9]

Aplt. Appx. at 71, 73.

Given this specificity, the reasonableness standard referenced in *Baker* does not apply in this case. *See* 109 P.3d at 560. We therefore reject the Property Owners' argument that the Forest Service's proposed road exceeds the scope of the Easements because it is unreasonable in light of the changed circumstances on their properties.

\*   \*   \*

Because the Forest Service's proposed road is consistent with how the term "truck trail" would have been understood at the time the Easements were granted, and because the "reasonableness" standard does not govern the scope of the Easements, we affirm the district court's conclusion that the Forest Service's proposed road does not exceed the scope of the Easements.

---

[9]Although the specific coordinates of the Easements differ, the language in the right-of-way deeds is equally specific.

23

## III. CONCLUSION

For the reasons discussed above, we affirm the district court's grant of summary judgment in favor of the Appellees.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge